Stephanie Anne SPRADLING,
Respondent,

v.

Jerry Don SPRADLING, Appellant.

Nos. 21474, 21601.[1]

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 9, 1998.

1. The dual appeal numbers in this case result from Appellant filing a notice of appeal before and after the entry of the trial court's amended judgment. Thereafter, we sustained Appellant's motion to consolidate the appeals.

Kay A. Van Pelt, Van Pelt & Van Pelt, P.C., Springfield, for Appellant.

John S. Pratt, Susan S. Jensen, Pratt & Fossard, Springfield, for Respondent.

Before MONTGOMERY, C.J., and SHRUM and BARNEY, JJ.

PER CURIAM.

Jerry Don Spradling (Husband) and Stephanie Anne Spradling (Wife) were married on January 29, 1989. On February 3, 1995, Wife filed a Petition for Dissolution of Marriage requesting custody of the parties' only child. On February 25, 1997, the trial court entered its decree dissolving the marriage. In its decree, the court (1) awarded Wife full physical and legal custody of the child; (2) granted Husband visitation with the child, subject to some restrictions; (3) ordered Husband to pay child support in the amount of $1,000 per month; (4) set aside each party's separate property and divided the marital property and debts; and (5) ordered Husband to pay a portion of Wife's attorney's fees in the amount of $12,000. Husband appeals each of these determinations.

Appellate review of this court-tried case is governed by Rule 73.01(c).[2] The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the

weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). The appellate court gives due regard to the trial court's opportunity to judge the credibility of the witnesses, mindful that the trial court was free to believe none, part or all of the testimony of any witness. Rule 73.01(c); *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

This court affirms the judgment of the trial court under any reasonable theory supported by the evidence. *Warren v. Tom*, 946 S.W.2d 754, 759 (Mo.App.1997). We view the evidence and inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). With this view in mind, we set forth the evidence presented at trial.

The parties' marriage was the fourth such union for Husband and the second for Wife. Wife had a son from her previous marriage, D. B., who was born on November 9, 1978. D.B. lived with the parties for the first few years of the marriage. D.B. exhibited some behavioral problems, including an obsession with starting fires. There was evidence that Husband disciplined D.B. physically, both striking and kicking the boy.

On August 7, 1990, Wife gave birth to the only child of the marriage, namely, Elizabeth Anne Spradling (Child). In August of 1994, D.B. was hospitalized for depression after he was charged with indecent exposure. Husband suggested Child should see Leslie Brown, a licensed therapist, to determine if D.B. had done anything inappropriate to Child. Wife was initially reluctant to take Child to a therapist because she could not believe D.B. would have molested his sister.

Ms. Brown informed the parties that Child talked about D.B. sexually molesting her. When Child was approximately four years old, D.B. touched her vagina. Prior to touching Child, D.B. exposed his genitals to her on at least one occasion. Wife had difficulty accepting that D.B. molested Child until D.B. admitted his actions during his therapy.

D.B. and Child have not had contact since September 1994. D.B. did not return to the parties' home after his hospitalization. At the time of trial he was living with his maternal grandparents in Ozark, Missouri, and had plans to move out of state with them. Wife testified that she kept D.B. separated from Child at all times after September 1994 and would not let D.B. know where they were currently living.

On February 3, 1995, Wife filed a petition for dissolution and moved from the marital home, taking Child with her. Wife has had primary physical custody of Child since that time, subject to regular visitation by Husband. Husband often cries in front of Child when it is time to return her to Wife. This makes Child feel responsible for her parents' divorce and Husband's sadness. Husband visits Child at daycare almost daily. No other parent does this, and it puts great stress on Child. Ms. Brown believes Child feels responsible for Husband and that she has to take care of him.

Prior to trial the trial court issued a temporary order requiring Husband to pay child support. Husband agreed to the amount of child support but failed to pay because Wife would not give him receipts for each penny she spent on Child. Husband testified he "didn't think he was hurting anyone by not paying child support."

With the exception of two or three months in late 1994, Child regularly attended therapy sessions with Ms. Brown up until the time of trial. Child was progressing well, but informed Ms. Brown that Husband and his mother, Mrs. Clark, were reading Child's case notes from therapy. Ms. Brown testified that she believes this upset Child and made her feel pressured to say things in therapy that Husband would want to hear. She also noted that Child told her, "My Daddy said I have to say the same [negative] thing [about Wife] I told you last time."

The trial court concluded that this manipulation was "an attempt by [Husband] to have placed in the therapist's notes a self verifying statement by [Child] that she was afraid at her Mother's and that the therapist notes would reflect [Child's] preference of a custodial parent." Ms. Brown felt this jeopardized Child's therapy immensely. Prior to trial the court ordered both parties to abstain from discussing matters contained in Ms. Brown's therapy notes in front of Child.

**2.** Rule references are to Missouri Court Rules (1997), unless otherwise indicated.

There was evidence Husband ignored this order.

Ms. Brown testified that she found no lasting trauma from the sexual contact between D.B. and Child but that Child felt grief resulting from the abrupt severing of the sibling relationship. She suggested that D.B. and Child should attend joint counseling in a supervised setting to allow Child to deal with her grief issues.

D.B.'s counselor, Mr. Hernandez, concurred with this suggestion. Mr. Hernandez maintained that this type of counseling session, where Child could confront D.B. and D.B. could take responsibility for his actions, is necessary for the children to put closure on the issue and move on with their lives. Wife stated that she would follow this advice if it would help Child. Husband adamantly opposes any contact between D.B. and Child, even in a supervised setting, in an effort to facilitate Child's emotional well-being.

Husband has difficulty controlling his anger. This often results in inappropriate outbursts. On one occasion, Child called 911 because Husband was yelling so violently. There was testimony that Husband displayed angry outbursts in Ms. Brown's office, to the extent that other people in the office became fearful of him. Husband often uses profane language in front of Child and has directed this language toward Wife and her family members on at least one occasion.

In addition to the testimony concerning child custody, the parties presented extensive evidence pertaining to their property interests and incomes.

Husband testified he could not judge how much money he earned on a monthly basis, even by looking at the monthly appointment books from the hair salon he owns. When confronted with these books, Husband claimed someone "had monkeyed with the dates and figures" in order to discredit any record of actual income.

Husband did not file a 1994 income tax return until 1996; therefore, there was no specific record of his income while the case was pending. He does not keep a bank account in his own name. He has opened accounts in his mother's name and Child's name. Husband pays his bills with money orders and does not keep records of his income, including that from his rental properties. Wife presented a certified statement to Commerce Bank on a loan application dated October 11, 1993. In this statement Husband stated his gross income was approximately $7,050 monthly.

During the marriage four pieces of property were purchased by the parties and are currently used as rental properties. Husband contended the properties were his separate property because they were purchased with the proceeds from the sale of a business he owned before marriage. Wife presented copies of the deeds for three of the properties showing that the properties were titled in both Husband's and Wife's names. Although the deed for the fourth property never came into evidence, Wife testified that it was also jointly titled.

■ In his first point on appeal, Husband contends the trial court's decision to award sole legal and physical custody of Child to Wife is against the weight of the evidence. Husband suggests he is in the best position to protect Child from further harm and that he is more likely to allow Child frequent and meaningful contact with the non-custodial parent.

■ A trial court's custody determination is afforded greater deference than any other type of case. *In re Marriage of Powell*, 948 S.W.2d 153, 156 (Mo.App.1997). This court will reverse the trial court's custody order only if it is manifestly erroneous and we are firmly convinced that the welfare of the child requires a different disposition. *Id.* This court presumes the trial court based its custody determination on the best interests of the child after considering the credibility of the witnesses and other intangibles which it is in a superior position to judge. *Id.* We will not reverse a custody decision so long as there is credible evidence upon which to base the custody award. *Id.*

Section 452.375.2 [3] governs custody determinations, setting forth the relevant factors a

---

**3.** Statutory references are to RSMo 1994, unless otherwise indicated.

trial court must consider when making such decisions. Husband is correct that this statute requires the trial court to examine the mental and physical health of all individuals involved in the case and to assess which parent is more likely to allow the child frequent and meaningful contact with the other parent. § 452.375.2(5) and (8). The statute is clear, however, that these factors merely provide a framework for deciding the overriding concern of what custodial arrangement is in the child's best interests. Even when taking these factors into account, we cannot say the trial court's custody determination was unsupported by substantial evidence.

After Wife learned D.B. molested Child, she took all reasonable steps to protect Child from future harm. D.B. lives in a separate residence from Child and has no contact with her. He does not even know where Wife and Child live. Wife ensured that Child received counseling. Wife has no intention of reuniting the children unless it is in a supervised counseling session at the suggestion of Child's therapist. Husband, on the other hand, refuses to allow any joint counseling, even if it would be emotionally beneficial to Child. Furthermore, Husband has actually impeded Child's emotional healing by interfering in her therapy. He has coached her to say negative things about Wife in order for him to gain custody. Husband caused Child extreme stress by letting her know he had access to her therapy notes, thereby jeopardizing Child's trust in Ms. Brown.

Husband has displayed inappropriate emotional outbursts in front of child. Child feels responsible for Husband's emotional well being. He weeps in front of Child at the end of visitation. Husband has also engaged in inappropriate displays of anger in front of Child. He has yelled so violently Child felt compelled to call 911. Husband directs profanity at Wife in front of Child. While there was abundant evidence that Husband's actions hindered Child's emotional well-being, the only evidence concerning Wife suggested she has an appropriate and loving relationship with Child and would be more likely to protect Child's emotional and physical well-being.

Husband argues that he is the parent more likely to allow the other parent contact with Child. We disagree. At one custodial exchange Husband cursed at Wife and her family. He cries when it is time for Child to leave. Husband does not allow Child to freely talk about Wife in his presence. Conversely, Wife allows Child to speak about her father. Wife allowed unscheduled visitation with Husband when his aunt was in town. Ms. Brown testified that Wife encourages Child to visit Husband even when Child is reluctant to do so. Wife also testified that she is willing to consult Husband about important decisions pertaining to Child. Wife does not appear less likely than Husband to allow contact with Child based on this evidence.

We cannot say the trial court's custody determination, based on the best interests of Child, was against the weight of the evidence or failed to take into consideration the relevant statutory factors. Point I is denied.

■ In his second point on appeal, Husband challenges the trial court's division of property. After the marriage the parties purchased four parcels of real estate, referred to as the Pennsylvania, Hart, Fremont, and Kimbrough properties. Husband maintains:

> The trial court erred in dividing the full value of four parcels of real estate between the parties in that: (1) A portion of each of the parcels is separate property of [Husband] because the down payments for each parcel were made with [Husband's] separate property and said error in classification resulted in an unjust distribution of property between the parties; (2) The valuations placed on two parcels are incorrect because they are not supported by the evidence presented.

Husband concedes the property is presumed to be marital because the parties were married at the time of purchase. He argues he overcame this presumption by showing the property was purchased with the proceeds from the sale of his separate property. We disagree.

■ While it is true the down payments on the parcels could be classified as Husband's

separate property, the non-marital contribution toward the purchase of the parcels was transmuted into marital property when the parcels were titled in the names of both Husband and Wife. "[P]lacing separate property into the joint names of both spouses creates a presumption that the property has been transmuted into marital property, and clear and convincing evidence is required to show that the transfer was not intended as a gift." *Clark v. Clark,* 919 S.W.2d 253, 255 (Mo.App.1996).

■ Although Husband testified that he purchased the parcels to help fund his retirement and denied he intended them to be a gift, the trial court apparently did not find his testimony credible. If one spouse has caused his separate property to be transferred to both spouses jointly, mere self-serving testimony that it was not intended as a gift is entitled to little weight. *Id.* Husband failed to overcome the presumption that down payments on the four parcels were intended as a gift to Wife. Accordingly, the trial court did not err when it classified the four parcels as marital property.

■ Husband also complains about the trial court's valuation of the Pennsylvania and Hart properties. Husband maintains there was no evidence to support the trial court's valuation of the properties because the court used the purchase price of the properties rather than the estimates submitted by both parties. Husband fails to cite a single case in support of this contention.

The purchase price of real estate may be considered competent evidence of the fair market value. *Held v. Held,* 896 S.W.2d 709, 711 (Mo.App.1995). The trial court had the purchase prices of the properties before it and believed that evidence to be the most compelling for purposes of its valuations. We cannot say this decision was against the weight of the evidence. Point II is denied.

■ In Point III, Husband challenges the portion of the judgment ordering him to pay $1,000 per month in child support. Husband argues the trial court abused its discretion by calculating child support based on an erroneous estimation of his income. "An award of child support is within the sound discretion of the trial court." *Price v. Price,* 921 S.W.2d 668, 673 (Mo.App.1996). "'We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion, and we will not disturb an award of child support unless the evidence is "palpably insufficient" to support it.'" *Id.*(quoting *Holmes v. Holmes,* 878 S.W.2d 906, 909 (Mo. App.1994)).

The trial court determined Husband's gross income was $7,050 monthly based upon a financial statement signed by Husband prior to the filing of this dissolution action. The financial statement failed to indicate whether or not the amount stated was Husband's gross receipts minus his ordinary and necessary business expenses.

The court found the financial statement to be the most reliable evidence of Husband's income based on its five specific findings suggesting Husband's lack of credibility concerning his financial circumstances. These findings included: (1) Husband closed bank accounts bearing his name and opened accounts in the names of his mother and Child "in order to obscure any financial tracking of his financial resources"; (2) Husband claimed someone "monkeyed" with his salon appointment schedule books in order to discredit any record of actual income; (3) Husband did not file a 1994 tax return until 1996, thereby obscuring his financial records while the case was pending; (4) When Husband receives checks, he buys money orders to pay his bills and does not keep the money order carbons as a record; (5) When Husband repeatedly hesitated before answering questions concerning his finances, his own attorney prompted him to "just tell the truth."

■ When determining the amount of child support to be paid, the application of Rule 88.01 and Form 14 is mandatory. *McKenna v. McKenna,* 928 S.W.2d 910, 913 (Mo.App.1996). "There must be evidence in the record to support an order of child support." *Id.* Husband correctly notes the instructions for completing Form 14 state that income from self-employment defines "gross income" as gross receipts "minus ordinary and necessary expenses required to produce income." The trial court failed to make find-

ings concerning Husband's ordinary and necessary expenses. Therefore, the trial court's child support calculations failed to consider Husband's ordinary and necessary business expenses. Wife's attorney tacitly conceded at oral argument that reversal and remand was necessary in order to properly determine Husband's income for purposes of Form 14 calculations. For these reasons Point III is well taken and the child support award must be reversed.

■ In his forth point on appeal, Husband claims the trial court erred in disallowing overnight visitation while Husband resides with his mother and disallowing Husband to utilize his mother as a child care provider. Husband claims this amounted to an abuse of discretion.

■ The principal factor considered in an award of visitation is the best interests of the child. *Hankins v. Hankins*, 920 S.W.2d 182, 187 (Mo.App.1996). A visitation order should only be reversed where it is unreasonable in duration or frequency. *Id.* A visitation order should not be reversed merely. because it is not the most convenient for a party. *Id.*

Husband was granted visitation, including alternate weekends from Friday to Saturday,. one evening a week, and alternate major holidays. The only restrictions on visitation concerned Husband's mother.

The court made several findings concerning Husband's mother, Mrs. Clark. The court noted that Mrs. Clark took Child to have a physical exam several months after the sexual abuse allegations were made. The court believed Ms. Brown's conclusion that this was more traumatic than the inappropriate touching by D.B. The court found that Mrs. Clark read Child's case notes and then discussed them in her presence. Mrs. Clark's actions were extremely damaging to Child and jeopardized her therapy.

The court also made findings concerning Mrs. Clark's demeanor in court. The court noted that Mrs. Clark's "gave testimony that was personal criticism of [Wife] and did not address any substantive issue." Furthermore, upon entering the courtroom, Mrs. Clark stopped, turned to Wife's parent's and gave them a "disdainful glare." The evidence suggested Mrs. Clark was hostile toward Wife and openly critical of her.

The trial court was in the best position to judge the credibility and demeanor of the witnesses. It obviously believed Mrs. Clark's actions in the past and her attitudes concerning Wife are harmful to Child. Although Mrs. Clark may no longer be used as a child care provider, the court did not say Husband cannot take Child to see her. We cannot say the trial court abused its discretion by limiting the contact between Mrs. Clark and Child during Husband's visitation. Point IV is denied.

■ In his final point on appeal, Husband contends the trial court erred in ordering him to pay Wife's attorney's fees in the amount of $12,000. A trial court has great discretion in awarding attorney's fees in dissolution proceedings. *Glenn v. Glenn*, 930 S.W.2d 519, 525 (Mo.App.1996). This court will affirm the trial court's award unless it is so arbitrary and unreasonable as to shock one's conscience and amount to an abuse of discretion. *Id.* The party challenging an award bears the burden of showing an abuse of discretion. *Id.*

Section 452.355 allows an award of attorney fees from one party to another "after considering all relevant factors including the financial resources of both parties." Husband's income is significantly higher than Wife's income. The trial court's award of attorney's fees does not shock one's conscience so as to amount to an abuse of discretion. Point V is denied.

The trial court's judgment is affirmed in all respects except for the child support award. That portion of the judgment is reversed, and the case is remanded for further proceedings. On remand, the trial court shall reconsider the issue of child support, and in doing so, may receive additional evidence.