Rita Marie WARD, Respondent,

v.

Larry Eugene WARD, Appellant.

No. WD 57659.

Missouri Court of Appeals,
Western District.

Dec. 26, 2000.

Daniel Lee Radke, St. Joseph, for appellant.

Phillip A. Burdick, St. Joseph, for respondent.

Before Presiding Judge
LOWENSTEIN, LAURA DENVIR
STITH and NEWTON, Judges.

LAURA DENVIR STITH, Judge.

Larry Eugene Ward appeals the circuit court's denial of his Motion to Modify a Qualified Domestic Relations Order (QDRO). In accordance with a property settlement incorporated in the parties' dissolution decree, the QDRO directed payment of part of Mr. Ward's pension benefits to his former wife, Rita Marie Ward. Mr. Ward contends that the court below erred in denying his motion to modify the QDRO because the language of the QDRO does not effectuate the parties' "true intent," in that it would allow value accrued to the pension after the dissolution was final to be included in the amount of monthly pension benefits payable to Ms. Ward, whereas Mr. Ward claims that the parties only wanted his wife to have a portion of the value of the pension at the time of the dissolution. We find that substantial evidence supported the court below's determination that the language of the QDRO reflects the true intent of the parties to the property settlement, and thus that it properly denied Mr. Ward's Motion to Modify the QDRO. Affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 30, 1992, the Circuit Court of Buchanan County entered its first amended judgment dissolving the marriage of Appellant Larry Ward and Respondent Rita Ward. As part of the court's distribution of marital property, it entered a QDRO, dividing Mr. Ward's retirement benefits from his Central States Southeast and Southwest Areas Pension Fund. In Paragraph 7 of its findings, the court stated as follows:

[Ms. Ward] is entitled to receive, in addition to other distributions hereinafter ordered 50% of the value in monthly payments of the [pension] plan on 18 June, 1992, to be paid over to her as a portion of [Mr. Ward's] monthly pension benefits . . .

Further, in paragraph 8(e) of the QDRO portion of the judgment, the court specifically set forth the method by which the amount of future payments should be calculated:

[Mr. Ward] shall assign to [Ms. Ward] as her additional share of the division of marital property herein, a portion of his future monthly benefits as set out below. Specifically: ... The percentage of [Mr. Ward's] benefits which shall be paid to [Ms. Ward] shall be calculated by determining the value of the plan to Mr. Ward on 18 June 1992. At the time of the retirement of [Mr. Ward] (for the purpose of paying monthly benefits), the percentage relationship of the 18 June 1992 value to the whole benefit shall be ascertained, and 50% of that monthly sum shall be paid monthly to [Ms. Ward].

Mr. Ward filed a Motion to Modify the QDRO on March 29, 1999. He alleged, as grounds for modification, that it was the intent of the parties to the dissolution that the portion of his pension that Ms. Ward would receive at the time of his retirement would be based on the value the pension would have if Mr. Ward had retired from the company at the time the dissolution became final, and if he had contributed no further income to the pension fund. He alleged a conflict between Paragraph 7 and Paragraph 8(e), which is part of the QDRO. He claims that Paragraph 8(e), as applied, does not effectuate the parties' "true" intent, as it would allow value accrued to the pension after the dissolution was final to be included in his monthly payments to Ms. Ward. Mr. Ward was prompted to file this motion to modify because of a letter he received from his pension fund administrator, which stated that the QDRO, as drafted, required the fund to remit 50% of "the percentage relationship of the 18 June 1992 value to the whole benefit" to Ms. Ward, or 30.21% of the total monthly benefit, resulting in a monthly payment of approximately $907.00 to Ms. Ward. The letter indicated that in order to effectuate Mr. Ward's desire that Ms. Ward receive only 50% of the benefit he would have been entitled to receive had he left the industry on June 18, 1992 which the administrator recognized would "significantly decrease [Ms. Ward's] potential benefit" the QDRO had to be amended to reflect such a formula and to reflect that the fund would honor such an amendment.

Mr. Ward therefore proposed the following alterations to the order, claiming that the proposed language would "effectuate the intent of the parties":

The percentage of [Mr. Ward's] benefits which shall be paid to [Ms. Ward] shall be calculated by determining the value of the plan to [Mr. Ward] on 18 June 1992. At the time of the retirement of [Mr. Ward] (for the purpose of paying monthly benefits), a sum equal to 50% of the benefit Mr. Ward would have been entitled to receive had he left the teamster industry on 18 June 1992 shall be paid monthly to [Ms. Ward].

The reconstructed order, according to Mr. Ward's calculations, should result in a monthly payment to Ms. Ward of only $173.00, rather than $907.00. On July 21, 1999, the circuit court entered a Judgment and Order denying Mr. Ward's Motion to Modify, stating that from the "references to the value of the plan at the time of retirement it is evident that the parties contemplated that such future value should be considered as a part of the formula in calculating monthly payments." The circuit court also found that the suggested modifications to the order would not "conform the terms of the order so as to effectuate the expressed intent of the order." Therefore, the motion to modify was denied. This appeal follows.

## THE TRIAL COURT DID NOT ERR IN DENYING MR. WARD'S MOTION TO MODIFY THE QDRO.

 Because this is a court-tried case, the trial court's decree must be affirmed on appeal unless there is no substantial evidence to support the decision, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Price v. Price,* 921 S.W.2d 668, 671 (Mo.App. W.D.1996). Moreover, we defer to the trial court's assessment of the

evidence, viewing the evidence and inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Price v. Price,* 921 at 671.

Mr. Ward moved the lower court to modify the QDRO in this case, suggesting that the language therein creates an ambiguity, in that it can be read to declare that Ms. Ward will receive payments in an amount greater than those to which she would have been entitled had Mr. Ward retired on the day the dissolution petition was filed, and had he contributed no further income to the pension fund. He claims that this was not the intent of the parties at the time of the order, and that the parties and court intended only for Ms. Ward to receive fifty percent of the amount Mr. Ward would receive in monthly pension had he retired on the date the dissolution was final. He thus would have the court modify the language of the order, to effectuate this alleged intent.

█ The normal rule is that, in determining whether a decree is ambiguous, we consider the whole instrument and give the words their natural and ordinary meaning. *Riener v. Riener,* 926 S.W.2d 6, 7 (Mo.App. E.D.1996). Here, Mr. Ward argues that, in interpreting the meaning of the language used in the QDRO and the remainder of the dissolution decree, we should consider what he believes would be the negative policy implications of interpreting the QDRO to entitle Mrs. Ward to one-half of the value of the pension as of the time of his retirement. He claims that such a reading of the QDRO would be unfair, and would give a "significant windfall" to Ms. Ward because it would require him to "continue to work for [Ms. Ward] for the rest of his working life."

Mr. Ward's argument has been addressed and rejected many times in the courts of this State. In *Lynch v. Lynch,* 665 S.W.2d 20 (Mo.App. E.D.1983), the husband argued that the formula used by the trial court to divide his pension included post-dissolution earnings. *Id.* at 24.

The court, in rejecting this argument, observed that a pension is a form of deferred compensation attributable to the entire period in which it was accumulated. *Id., citing, Kuchta v. Kuchta,* 636 S.W.2d 663, 665 (Mo. banc 1982). In other words, higher retirement benefits that may be realized by the pension plan participant through continued employment after the dissolution are made possible, in part, by his years of employment during the marriage. *Lynch,* 665 S.W.2d at 24. To preclude the spouse from an opportunity to share in these increased benefits would be unjust and inequitable. *Id.* The court in *Lynch* went on to explain the propriety of a division, which recognizes the full value of the marriage years, employing a rationale that is directly applicable here:

> The award to the wife of a portion of the whole benefits (sic) is, at this point, an award of rights, the value of which cannot be fixed with precision until they mature. A present division of those rights which allows the wife her share of their value, when and if they mature, does not award her after-acquired separate property of her former spouse. Rather, such a division on those conditions merely assures that the parties' qualitative parity of interest will be maintained and that their respective interests in the rights that the court divided will remain of equal share.

*Id.*

*Stoerkel v. Stoerkel,* 711 S.W.2d 594 (Mo. App. W.D.1986), cited and followed *Lynch* on this point, noting that "higher retirement benefits that may be realized by continued employment after the dissolution are made possible at least in part by the years of employment during the marriage." *Id.* at 596. Similarly, *Fairchild v. Fairchild,* 747 S.W.2d 641, 643 (Mo.App. W.D.1988), noted that although retirement benefits depend upon contingencies and so by their nature are speculative, both as to future entitlement thereto and as to amount, this does not deprive them of their character as marital property, and

they may be properly divided as such based on the contribution made during the marriage to the accrual of the benefits. We therefore reject Mr. Ward's argument that equitable principles require us to modify the QDRO so as to preclude Ms. Ward from obtaining more of the pension than she would have received had Mr. Ward quit working for his employer on the date of the dissolution.

■ We are thus left solely with the language of the QDRO and the remainder of the judgment, as well as the testimony of the parties as to what they believed was intended by the court in entering the QDRO, as guides to ascertain the intent of the court at the time it entered the QDRO.

Section 7 of the court's findings in the dissolution decree states:

> [Ms. Ward] is entitled to receive, in addition to other distributions hereinafter ordered 50% of the value in monthly payments of the [pension] plan on 18 June, 1992, to be paid over to her as a portion of [Mr. Ward's] monthly pension benefits . . .

Mr. Ward suggests that this is inconsistent with Paragraph 8(e) of the QDRO portion of the judgment, which states:

> The percentage of [Mr. Ward's] benefits which shall be paid to [Ms. Ward] shall be calculated by determining the value of the plan to [Mr. Ward] on 18 June 1992. At the time of the retirement of [Mr. Ward] (for the purpose of paying monthly benefits), the percentage relationship of the 18 June 1992 value to the whole benefit shall be ascertained, and 50% of that monthly sum shall be paid monthly to [Ms. Ward].

Mr. Ward, apparently relying only upon the first sentence of Paragraph 8(e), considered in tandem with Paragraph 7 of the dissolution court's "findings," suggests that this provision is best read to direct that Ms. Ward receive only 50% of the amount Mr. Ward would have received had he retired on the date the dissolution was final, and that the rest of Paragraph 8(e) be amended accordingly.

Mr. Ward's reading of the first sentence of Paragraph 8(e) wholly disregards the remainder of that paragraph. It further ignores the simple fact that, had the court intended that Mrs. Ward receive only her ratable portion of the benefit to which Mr. Ward would have been entitled had he retired from the company on the day of the dissolution, then no resort to formulas would have been required. This sum could have been ascertained that day, and the court could have awarded a sum certain to Ms. Ward, to vest upon her husband's retirement. Instead, as in *Lynch* and the other cases cited above, the court expressed Mrs. Ward's interest in the pension benefits by referring to the "percentage relationship" between the value of the pension in 1992, and the value of "the *whole benefit*" (emphasis added). Mrs. Ward testified that the QDRO as written and as interpreted by the court below expressed the intent of the parties that her pension benefits be valued as a percentage of the whole value of the pension at the time Mr. Ward retired. This interpretation is also consistent with the now almost standard approach to division of pension benefits approved in *Lynch* and similar cases.

For these reasons, in light of the language of the judgment and QDRO, Ms. Ward's testimony, and the guidance of *Lynch* and similar cases, we conclude that substantial evidence supported the court below's determination that the dissolution judge intended that the amount of Ms. Ward's monthly payments were to be determined using a formula, the numerator of which is the value of Mr. Ward's pension in 1992, and the denominator of which is the value of his pension at the time he, in fact, retires, and that the QDRO as written effectuates this intent. Had the dissolution court wished to phrase Paragraph 8(e) of the order in such a way as to effectuate Mr. Ward's proposed reconstruction of the order, it would not have

included any mention of "percentage relationships" between the 1992 value of the pension, and the value of the whole benefit. The QDRO makes sense as written, and reflects the intent testified to by Ms. Ward. Nothing but Mr. Ward's self-serving testimony supports his claim that the language of Paragraph 8(e) does not reflect the intent of the parties and must be changed to do so. It was up to the court below to determine what the dissolution court intended the QDRO to mean. Substantial evidence supports its determination. We affirm.

LOWENSTEIN, P.J., and NEWTON, J., concur.