Ronna E. FARNSWORTH, Respondent,

v.

Harold D. FARNSWORTH, Appellant.

No. WD 61020.

Missouri Court of Appeals,
Western District.

July 8, 2003.

Hugh D. Kranitz, St. Joseph, MO, for appellant.

Ronald R. Holliday, St. Joseph, MO, for respondent.

Before ELLIS, C.J., BRECKENRIDGE and EDWIN H. SMITH, JJ.

PATRICIA BRECKENRIDGE, Judge.

Harold D. Farnsworth appeals from the judgment dissolving his marriage to Ronna E. Farnsworth. Husband challenges (1) the trial court's designation of a parcel of real property as non-marital; (2) the trial court's valuation of Husband's buy-out plan and vacation pay; and (3) the language in the judgment dividing Husband's retirement/pension plan. This court finds that the trial court erred in classifying certain property as non-marital property, but the erroneous classification did not result in prejudice requiring reversal of the property division. This court further finds that the trial court did not err in its valuation of Husband's buy-out plan and vacation pay proceeds, and the language the trial court used to divide Husband's retirement/pension plan was sufficiently definite to be enforceable. The trial court's judgment is affirmed, as modified.

Husband and Wife were married on April 7, 1977. At that time, Husband was age thirty-eight, Wife was age twenty-two, and they were both employed at the Quaker Oats factory in St. Joseph, Missouri. The first child born of the marriage, Barbara E., was born on March 17, 1979. Subsequently, in 1980, Husband and Wife mutually decided that Wife should quit her employment with Quaker Oats and stay at home as a full-time homemaker. The couple's second child, Corey L., was born on December 25, 1982.

On December 28, 2000, Wife filed her petition for dissolution of marriage. The couple separated that same day.

Husband retired from Quaker Oats on January 18, 2001, at the age of sixty-three, in conjunction with a plant shutdown. At that time, he received $27,000 from Quaker Oats as a result of a buy-out plan and $4,400 in vacation pay.

On January 22, 2002, the trial court entered its judgment dissolving the marriage and dividing the parties' non-marital and marital assets. In relevant part, the trial court awarded Wife a five-acre piece of property worth $31,000, of which it designated $24,000 as her non-marital property. The trial court also awarded Wife half of Husband's retirement/pension plan and half of the buy-out plan and vacation pay Husband received from Quaker Oats. Husband filed this appeal.

## Standard of Review

■ "The trial court's decision in a dissolution proceeding will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *DeMayo v. DeMayo*, 9 S.W.3d 736, 739 (Mo. App.2000) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). In reviewing the judgment, this court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the decree and disregards all evidence and inferences to the contrary. *Ward v. Ward*, 34 S.W.3d 288, 291 (Mo.App.2000). "The appellant bears the burden of demonstrating error," and this court defers "to the trial court's decision, even if the evidence could support a contrary conclusion." *Taylor v. Taylor*, 25 S.W.3d 634, 638 (Mo. App.2000).

## Error in Classifying Property Does Not Require Reversal

■ In his first point, Husband contends that the trial court erred in classifying as Wife's separate property a five-acre piece of property that was purchased by Wife prior to the couple's separation. Husband argues that, while the property was

purchased with money that Wife had inherited, Wife transmuted that portion of her inheritance into marital property when she had the property deeded to both her and Husband as tenants by the entirety.

The record reflects that Wife inherited $40,000 from her father's estate in 1999. Wife used part of that money to pay off the mortgage on the marital home, a remodeling loan, and the loan on Husband's truck. In 2000, Wife also used $24,000 from her inheritance to buy five acres of land at 1106 South Highway 71 near Savannah, Missouri.[1] When she made that purchase, Wife had the deed titled to Husband and Wife as joint tenants. At trial, Wife testified that she had the property titled in this manner because she was trying to find something to keep the marriage together. Wife stated that she and Husband had planned to use the property to grow perennials to sell at a farmers' market. Wife stated that she put Husband's name on the property to make him feel a part of the business; she did not intend to "award a portion of it to him." She said that she had not "thought that far ahead," nor did she understand the law. Wife further testified that Husband did some remodeling work on the property before their separation.

In entering its judgment, the trial court valued the property at $31,000. The court designated $24,000 of the property as Wife's non-marital property and the remaining $7,000 as marital property. The court awarded the real property to Wife. On appeal, Husband challenges the trial court's designation of $24,000 of the real property as non-marital.

 In classifying the real property as part marital and part non-marital, the trial court was apparently applying the 'source of funds' rule. "Under the source of funds rule, whether property is marital or separate depends on the source of the funds that financed the purchase of the property." *Williams v. Williams*, 965 S.W.2d 451, 454 (Mo.App.1998). "Property is considered to be acquired as it is paid for, so proportionate shares in the value of an asset should be designated marital or separate according to the source of the payments made to acquire the asset." *Id.*

 In characterizing property as marital or non-marital, however, Missouri courts must also consider, when properly raised, the application of the theory of transmutation, which allows a spouse to transmute a piece of separate property to marital property by express or implied agreement.[2] *Id.* Husband contends that Wife transmuted her $24,000 contribution to the purchase of the real property when she had the deed issued in both of their names, and that the trial court erred in determining that Wife's contribution remained a non-marital asset.

 Indeed, "property acquired after marriage which is placed in joint names is presumed to be marital property, even if one spouse furnished all the consideration." *Spidle v. Spidle*, 853 S.W.2d 311, 314 (Mo.App.1993). Accordingly, when a spouse uses non-marital assets to purchase property, but causes the property to be

---

1. Wife testified that a few thousand dollars of the purchase price may have come from her "business money" or the proceeds of some Quaker Oats stock that she had sold. However, Husband testified that he did not dispute that all of the money that went to the purchase of the property came from Wife's inheritance. Viewing the evidence in the light most favorable to the judgment, we must consider all of that money to have come from Wife's inheritance.

2. "There is no conflict between the source of funds rule and transmutation; they are merely relevant in different factual situations." *Williams*, 965 S.W.2d at 454.

jointly titled in both spouses' names, there is a presumption that a gift was intended to the other spouse and that the property has been thereby transmuted into marital property. *Williams*, 965 S.W.2d at 454–55; *Spradling v. Spradling*, 959 S.W.2d 908, 912–13 (Mo.App.1998). To rebut this presumption, the spouse claiming that the property should be designated non-marital must introduce clear and convincing evidence that he or she did not intend a gift to the other spouse. *Williams*, 965 S.W.2d at 455. "The clear and convincing evidence standard refers to evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App.1995).

▆▆▆ While generally arguing on appeal that she satisfied her burden in this regard, Wife does not point to any evidence in the record that would support a finding that she did not intend to make a gift to Husband. In fact, Wife testified that the real property was purchased so that the couple could develop a business on it and that she intentionally had the property titled in both of their names in hopes that this gesture would improve the couple's relationship. If anything, Wife's testimony indicates that she intended to make a gift to Husband.[3] Her statements that she did not intend to "award a portion of it" to her Husband and that she had not thought ahead and did not understand the law are

not clear and convincing evidence that she did not intend a gift to Husband.[4] Accordingly, the money used by Wife to pay for the five-acre tract would qualify as her separate property; her non-marital contribution toward the purchase of the property was transmuted into marital property when the deed was titled in the names of both Husband and Wife. *See Spradling*, 959 S.W.2d at 912–13; *Williams*, 965 S.W.2d at 455. Therefore, the trial court erred in finding that $24,000 of the real property's value was Wife's separate property instead of marital property.

▆▆▆ "Error in classifying property is not necessarily prejudicial, however, unless it materially affects the merits of the action." *Jennings*, 910 S.W.2d at 765. "It is well settled that 'the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair, will not require a reversal.' " *Burk v. Burk*, 936 S.W.2d 144, 145 (Mo.App.1996) (quoting *In re Marriage of Garrett*, 654 S.W.2d 313, 316 (Mo.App.1983)).

Husband's point relied on claims error in the trial court's classification of the real property as non-marital but asserts no prejudice resulting from such an error, nor does his point assert error in the trial court's distribution of assets.[5] In the argument following this point, Husband merely conclusively states that the trial court's actions in classifying the property as non-marital and setting it off to Wife resulted in an inequitable and unjust dis-

---

3. *See Williams,* 965 S.W.2d at 455 ("Husband's testimony that he wanted the . . . property to be used for the children, a marital purpose, actually bodes in favor of classifying his contribution to the purchase of the property as marital in nature.").

4. "If one spouse has caused his separate property to be transferred to both spouses jointly, mere self-serving testimony that it was

not intended as a gift is entitled to little weight." *Spradling,* 959 S.W.2d at 913.

5. The Southern District of this court has indicated that the failure to allege prejudice and unfairness in the distribution of marital assets in a point relied on claiming misclassification of property constitutes an abandonment of any claim of prejudice sufficient to warrant reversal. *See Burk,* 936 S.W.2d at 146.

tribution of the marital assets. Husband does not develop his claim of prejudice further.

On the record before this court, it does not appear that the reclassification of the real property as marital renders the trial court's distribution unfair, nor does this court believe that the reclassification materially alters the trial court's award. At trial, Husband requested that the court divide the marital property, including the five acres, equally between the parties. The couple's marital assets, aside from Husband's pension, were valued at $282,991. Of those assets, the trial court awarded Husband assets worth $155,081 and awarded Wife assets worth $127,910. Accordingly, Husband received approximately 55% of the marital assets and Wife received approximately 45%. When $24,000 of the real property's value is included the total marital assets awarded to Wife, Wife still receives less than half of the marital assets in the trial court's property division. Accordingly, the trial court's division of property, even when the five acres is classified as marital property awarded to Wife, still grants Husband more than he requested.

In addition, the trial court was required by section 452.330.1(3), RSMo 2000,[6] to take into consideration the value of the non-marital assets set aside to each spouse in dividing the marital assets. Thus, the fact that $24,000 of the real property's value was set aside to Wife as non-marital may well have influenced the trial court's decision to award her less than an equal share of the marital assets.[7]

■ Furthermore, "[a]lthough transmutation determines the character of the property (whether it is marital or separate), it does not determine the division of the property (how much should be apportioned to each spouse)." *Mellon v. Mellon,* 973 S.W.2d 570, 573 (Mo.App.1998). Under section 452.330.1(2), the trial court is required to consider the contribution of each spouse to the acquisition of the marital property in dividing the marital assets. Accordingly, the reclassification of the property as marital requires the consideration of Wife's significant contribution to the purchase of the real property when dividing the marital assets.

In light of the record and the factors to be considered in dividing marital property, this court does not believe that the misclassification of the value of the five acres rendered the trial court's distribution of property unfair or otherwise materially affected the merits of this action. *See Jennings,* 910 S.W.2d at 765. Accordingly, the trial court's error in classifying the real property's value as marital does not require reversal.

Under Rule 84.14, this court has the authority to render "such judgment as the court ought to give." Therefore, this court exercises its discretion to classify as marital property the portion of the value of the

---

6. All statutory references are to the Revised Statutes of Missouri 2000.

7. There was evidence that Wife began having a relationship with a man toward the end of the marriage. Wife testified the relationship was not sexual until after the parties separated, which the trial court may have disbelieved. Under section 452.330.1(4), the trial court is required to consider the parties' conduct during the marriage when dividing the marital property. However, " '[i]t is only when misconduct of one spouse changes the balance so that the other must assume a greater share of the partnership load that it is appropriate that such misconduct can affect the distribution of property.' " *McNair v. McNair,* 987 S.W.2d 4, 6–7 (Mo.App.1998) (citations omitted). As there was no evidence that Wife's misconduct placed a greater burden on Husband, this factor could not have affected the distribution of property.

five acres awarded to Wife that the trial court erroneously classified as non-marital in its judgment. *See Burk,* 936 S.W.2d at 146. Having made this correction to the judgment, this court does not need to remand the matter back to the trial court for any further proceedings. *Id.*

### No Error in Valuation of Husband's Buy–Out Plan and Vacation Pay Proceeds

■■■ In his second point, Husband contends that the trial court erred in imputing to him the $27,000 that he received as part of a buy-out plan when he retired from Quaker Oats on January 18, 2001, and the $4,400 that he received in vacation pay at that time, and in awarding Wife half of that money. Husband admits having received the $31,400 from Quaker Oats, but claims that those funds had been expended by the date of trial and that it was, therefore, erroneous for the trial court to have included them in the division of marital property. Husband contends that the trial court should have considered only the value of those assets remaining as of the date of trial, which was approximately $5,000.

■■■ Husband is correct that, "as a general rule, the appropriate date for valuing marital property in a dissolution proceeding is the date of trial." *Conrad v. Conrad,* 76 S.W.3d 305, 314 (Mo.App.2002). "Thus, under this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property." *Id.* There is an exception to the general rule, however, where a spouse is found to have secreted or squandered marital assets in anticipation of the marriage being dissolved. *Id.* In such a case, the court may hold that spouse liable for the value of the secreted or squandered assets. *Id.*

■■■ "[A] spouse, claiming that a marital asset is being secreted or was squan-dered by the other spouse in anticipation of a dissolution proceeding, must introduce evidence demonstrating that there existed at some point a marital asset, which is being secreted or was squandered." *Id.* at 315. Once such evidence is introduced, while the burden of proof remains with the spouse claiming that the other has secreted or squandered the marital asset in question, "the burden of going forward with the evidence shifts to the other spouse to 'account' for the claimed secreted or squandered asset by presenting evidence as to its whereabouts or disposition." *Id.* "This is a logical procedural step in resolving the issue of the secreting or squandering of a marital asset, in that the spouse claiming that an asset has been secreted or squandered by the other spouse is usually not in a position to know exactly what the other spouse did with the asset, especially in the case of the secreting of an asset." *Id.*

At trial, Wife argued that this exception applied and that Husband had either secreted or squandered the buy-out plan and vacation pay money. Wife presented evidence that Husband received the $31,400 at issue in January 2001 and that Husband was claiming that only about $5,000 of those funds still remained. Wife contended that those funds had not been necessary to pay Husband's living expenses and should be imputed to Husband.

In response, Husband conceded that he received the money, but claimed that all but about $5,000 of that money, or $26,440, had been spent prior to trial on living expenses and debt payments. Husband then provided testimony accounting for about $13,424 in living expenses, payments on outstanding debts, and voluntary support payments made to Wife.

If, in fact, the proceeds from the buy-out plan and vacation pay were spent on his

legitimate and reasonable needs during the course of his separation from Wife prior to the dissolution proceeding, the trial court's valuation of that asset should have been made based upon the funds available at the time of trial. *Id.* at 314–15. "Such expenditures have been held to be legitimate expenditures of marital assets, as would be the case if the parties had not separated." *Id.* at 315.

The first problem with Husband's claim that the funds were expended on legitimate living expenses is that the expenses for which Husband presented evidence fall well short of the $26,440 missing from the funds paid by Quaker Oats. The trial court most certainly could have determined that the funds unaccounted for by Husband had been secreted or squandered.

Furthermore, Husband testified that he had also withdrawn $5,000 in additional funds from a marital account to pay for living expenses and that he had begun receiving $1,329 per month in social security benefits starting on June 1, 2001. Adding these two sources of income together, the trial court could reasonably have deemed $7,658 of the expenses testified to by Husband to have been paid therefrom rather than from the buy-out plan and vacation pay proceeds.

Moreover, while conceding in her testimony that Husband had spent some of the buy-out plan and vacation pay money on living expenses,[8] Wife presented evidence that Husband could have been drawing money from his pension that would have paid for those expenses. Wife testified that, based upon her knowledge of Husband's retirement plan at Quaker Oats, Husband could have started drawing from his pension almost immediately after he left the company and contended that he should have been paying for his living expenses from those funds rather than from the buy-out plan and vacation pay proceeds.

While Husband presented testimony to the contrary, asserting that he was not eligible to draw from his pension benefits until June 1, 2001,[9] it was up to the trial court to determine which testimony it found to be more credible and resolve any conflicts in the evidence. *Conrad,* 76 S.W.3d at 316. If it believed that Husband could have been drawing upon his pension as a source of income, the trial court was entitled to impute that income to Husband. Having done so, the trial court could reasonably have found that Husband's remaining living expenses were more than satisfied by that imputed income.

Accordingly, viewing the evidence in the light most favorable to the trial court's judgment, this court finds that the record sufficiently supports the trial court's inclusion of all of the buy-out plan and vacation pay proceeds as marital property. The trial court did not abuse its discretion or otherwise err in awarding Wife half of those proceeds.[10] Husband's second point is denied.

---

8. She also testified that she was aware that he had given some of that money to his children.

9. The transcript reflects that some letters or documents related to Husband's pension plan were introduced into evidence by Husband at trial. Those documents have not been included in the record on appeal, however, and will not be considered in our review. *See Curators of Univ. of Mo. v. St. Charles County,* 985 S.W.2d 810, 814 (Mo.App.1998). Further-

more, the testimony related to those documents does not indicate that the documents establish that Husband could not have drawn from his pension prior to June 1, 2001.

10. Indeed, even according to Husband's testimony, he could have started receiving his monthly pension payments of $2,370 starting on June 1, 2001. Had he begun drawing benefits at that time, he would have received $4,740 by the date of trial. Adding that

### Language of Award Sufficient to Divide Husband's Retirement/Pension Plan

Finally, in his third point, Husband claims that the trial court's award of "One-half (1/2) of the Quaker Oats Retirement/Pension Plan with survivor annuity (value as of 7–24–01)" to each of the parties is so vague, indefinite, and uncertain as to render the judgment void and unenforceable. "If a judgment is indefinite, it is void and unenforceable, and prevents an appellate court from obtaining jurisdiction, requiring a dismissal." *Sunbelt Envtl. Servs., Inc. v. Nielsen*, 75 S.W.3d 889, 892 (Mo.App.2002). With some minor exceptions, the "provisions in dissolution decrees 'must be sufficiently certain to be susceptible of enforcement in the manner provided by law without requiring external proof, and if it does not satisfy this requirement such provision is void.'" *Hunt v. Hunt*, 65 S.W.3d 572, 577 (Mo.App.2002) (citation omitted).

In support of this point, Husband notes that the evidence reflects that he had not yet made an election from the three payment plans available to him under the retirement/pension plan and argues that the failure of the court to indicate which option it was basing its award upon rendered the judgment too indefinite to be enforceable. Contrary to Husband's contention, an award of a percentage of pension benefits is sufficiently definite to be enforceable, despite the fact that the benefits may be subject to some future contingencies. *See Ward*, 34 S.W.3d at 290–91; *Miles v. Miles*, 43 S.W.3d 876, 879 (Mo.App.2001). Of the three options available to Husband, only two provide for a survivor annuity, which the judgment requires. The second option, expressly designated by the trial court in its Memorandum of Findings, provides for a larger monthly payment and lower survivorship annuity. Although the Memorandum of Findings would not be binding if in conflict with the Corrected Judgment Entry for Dissolution of Marriage, there is no conflict between the two. Moreover, at the hearing on Husband's Motion for New Trial, Reconsideration and Clarification, the trial court reaffirmed that its judgment reflects a division of the retirement plan consistent with the second option.

Husband also contends that the trial court's award could be interpreted as granting his request that he receive all of his pension benefits with Wife receiving a fifty-percent right of survivorship at his death rather than granting her half of all of his pension benefits. The plain language of the trial court's judgment simply cannot be interpreted this way. The award to each party of half of the retirement/pension plan with survivorship annuity gives Wife half of the retirement funds currently payable and then the survivor's benefit upon the death of Husband.

This court finds that the trial court's award of "One-half (1/2) of the Quaker Oats Retirement/Pension Plan with survivor annuity (value as of 7–24–01)" to each of the parties is sufficiently definite to be enforceable and clearly refers to the total value of Husband's retirement/pension plan. Husband's third point is denied.

The trial court's judgment is modified to reclassify the entirety of the five acres of real property as marital property. The judgment is affirmed in all other respects.

All concur.

---

amount to the $7,658 Husband received from a marital account and social security, only a little over $1,000 of the $13,424 living expenses testified to by Husband would have needed to have been paid for from the buy-out plan and vacation pay proceeds.