In re the MARRIAGE OF David Lee BREDVICK and Lorrie Suzanna Bredvick.

David Lee Bredvick, Appellant,

v.

Lorrie Suzanna Bredvick, Respondent.

No. 28445.

Missouri Court of Appeals, Southern District, Division II.

April 2, 2008.

James R. Royce, McDonald Hosmer King & Royce, P.C., Springfield, for Appellant.

J. Christopher Allen, Allen & Rector, Lebanon, for Respondent.

Before BARNEY, P.J., RAHMEYER, J., and BURRELL, J.

PER CURIAM.

Appellant David Lee Bredvick ("Husband") appeals the trial court's "Judgment and Decree of Dissolution of Marriage" dissolving his marriage to Respondent Lorrie Suzanna Bredvick ("Wife"). He raises three points of trial court error. Appellant's first point relied on is dispositive. We dismiss the appeal.

The record reveals the parties were married on October 5, 1996, and were separated by July 19, 2004. There were no children born of the marriage although both parties have children from previous marriages. During the parties' marriage Husband was employed as a foreman for

Midwest Pipeline Services, but changed jobs prior to trial. At the time of trial, Husband was employed with Cross Country Road Boring where he worked a 40-hour week and made $30.00 per hour. Wife was forty one years old at the time of trial and was employed as general manager of La Mexican Kitchen, a restaurant owned by her mother. She earned $1,841.00 a month plus tips.

The parties own two adjoining tracts of real estate—both of which were purchased with money Wife received from the dissolution of her previous marriage.[1] The first tract of land is comprised of five acres where the parties built a 6,800 square foot house after they were married. The second tract consists of thirty-five acres of pastureland upon which the parties built a barn for their horses. The parties both contributed physical labor and financial support to the building of the home and the barn. Husband testified the total value of the parties' real estate was $400,000.00; Wife testified it was valued at $310,000.00; and James Jones, the county assessor for Webster County, testified the house and five acres were assessed at $271,600.00 and the 35 acres and barn were assessed at $8,900.00. The parties testified that the majority of the furniture in the home came from Wife's previous marriage and that some furniture was purchased during the marriage. Husband admitted he brought few possessions into the marriage other than a television, an entertainment center, a bed, his personal vehicle, and clothing. Wife testified that in addition to the money used to buy the real property at issue and the furniture mentioned above, at the time of the parties' marriage she also owned cattle, some horses, several vehicles, and O'Reilly Automotive stock.

At the time the petition for dissolution was filed the parties owned about 40 horses as well as numerous horse trailers and other farm equipment. During the marriage the parties had a joint bank account into which they both made deposits. It appears Wife was generally responsible for "writing the checks out...." Due to the nature of Husband's job during the marriage, which required a great deal of travel, the parties accrued significant credit card debt from Husband's expenses while traveling. Both parties in this matter have accused the other spouse of engaging in extramarital affairs and Wife asserts Husband gave her a venereal disease.

At trial, Wife testified that before Husband filed for divorce, he contacted her in February or March of 2005 "to try to get this divorce taken care of ..." and the parties agreed to meet and discuss a possible division of property. Husband told her he "wanted to get with [her] so [they] could get this divorce over, because he wanted it over in 30 days ... and he wanted [her] attorneys to draw up the agreement and he would sign it...." The parties met for four hours during which time Husband told Wife he had taken everything he wanted from the house and Husband agreed to pay maintenance to Wife in the amount of $1,200.00 a month. Wife's attorneys then drew up a separation agreement ("the Agreement") which was signed by both parties, notarized, and filed with the trial court in March of 2005.[2]

---

**1.** Wife testified she used $120,000.00 in cash to purchase the property at issue and to aid in the construction of the buildings and Husband testified Wife contributed $80,000.00. Husband testified the parties originally purchased the tracts as one piece of property and later divided the tracts for tax purposes due to

their horse breeding operation on the majority of the acreage.

**2.** The agreement stated in pertinent part:

   1. That [Husband] shall receive as his sole and separate property the following:

According to Wife, Husband then retrieved from the marital residence the items listed in the Agreement, including a Grizzly four-wheeler; Wife "signed the titles over to him on that stuff;" she and Husband divided the various marital debts and bills based on the Agreement and began making those payments each had agreed to assume; and the parties filed a joint tax return for 2004 based on the Agreement. Wife testified she felt the Agreement was valid and should be enforced by the trial court because she relied upon it by taking the foregoing actions.

At trial, Husband testified the parties' property should be divided as set out in their consolidated statement of debts and assets; that each party should keep the items in their possession except for a specific list of additional items he was requesting; and that each party should pay the debts on the assets they are awarded. However, Husband also testified the Agreement should not be enforced by the trial court. Husband admitted he met with Wife in early 2005 for a "[c]ouple of hours" in an effort to "get the divorce over with." He stated they reached an Agreement and Wife got the Agreement in written form from her attorneys. He stated at that time he had no knowledge about the amount of the parties' specific debts. He stated he thought he was making about $100,000.00 per year at that time, but he was not sure because his check stubs went

> A. All clothing, personal items and effects belonging to [Husband]. All bank accounts in his name, and all separate property currently in his possession; and
> B. All items of property and/or debt listed on Exhibit A. . . .
> C. [Husband] to take over payments on the Gri[zz]ly 4–wheeler and will receive it as his. [Wife] agrees to sign any and all necessary documents . . . to transfer [title] . . . into the sole and separate name of [Husband] once debt has been paid through Capitol One.
> D. [Husband] to take over the following debts: 2002 Jeep Wrangler . . . at $281.00 per month. [Wife] agrees to sign any and all necessary documents . . . in order to transfer this automobile into the sole and separate name of [Husband]; Fleet Credit Card . . .; Visa Credit Card . . . and Empire Bank loan . . . at $240.00 per month.
> 2. [Wife] shall receive as her sole and separate property the following:
> A. All clothing, personal items and effects belonging to [Wife]. All bank accounts in her name, and all separate property currently in her possession.
> B. All items of property and/or debt listed on Exhibit B. . . .
> C. [Wife] to take over the following debts: 2004 FORD Dually . . . at $718.93 per month. [Husband] agrees to sign any and all necessary documents . . . to transfer this automobile into the sole and separate name of [Wife]; Peoples Bank of Fordland loan . . . at $149.45 per month; house payment . . . at $1,568.87 per month, and if [Wife] decided to sell the house . . . 100% of the proceeds will go to [Wife].
> 3. [Husband] shall pay all reasonable attorney fees and court costs left in the dissolution of the marriage of the parties.
> 4. The parties agree that [Husband] will keep [Wife] as his [pension plan] Beneficiary unless he remarries with his Union.
> 5. The parties agree that they will file their 2004 income taxes together and will split the cost of the preparation and any money that may be owed.
> 6. The parties agree that [Husband] will sign any and all documents . . . in order to transfer the following trailers into the sole and separate name of [Wife]: 94 Trailer, . . . 98 Wrangler, . . . and 97 Diamon. . . .
> 7. The parties agree that . . . maintenance shall be paid to [Wife] in a monthly installment of $1,200.00 to be paid through the Court system on the first of each month, for the term of four (4) years. If [Husband's] income should drop dramatically, it may be re-evaluated at [Husband's] expense. . . .
> 8. The parties agree that [Husband] will pay [Wife] $2,108.00 on the day that the divorce between the parties is finalized.
> * * *
> 10. Subject to the provisions herein contained, all other property, real or personal, wheresoever situated . . . shall be and remain the sole and separate property of such party. . . .

to Wife who then paid all of the bills. He stated he discussed the Agreement with the attorney who was representing him at the time. His attorney advised him the Agreement was "pretty one-sided," but Husband stated he wanted "to get the divorce over with" quickly. His attorney made a counter-offer to Wife to reduce the award of maintenance from $1,500.00 to $1,200.00. This change was then incorporated into the Agreement. Husband testified "the [A]greement is consistent with what [he] and [Wife] did ..." as far as exchanging property and signing titles over to each other. Husband testified that since that time he has sold seven of the eight horses awarded to him in the Agreement; filed his taxes with Wife per the Agreement; signed over title to certain trailers to Wife per the Agreement; and sold the four-wheeler awarded to him in the Agreement.

Nevertheless, Husband also testified the Agreement should not be enforced because he "really wasn't thinking too good [when he signed it]. [He] didn't put a pencil to it. [He] can't afford to pay all that." He stated he had just been in a hurry to get divorced from Wife. Furthermore, he related his main problem with the Agreement was the $1,200.00 per month in maintenance to Wife and he did not feel he "should give up the whole house...."

At the close of all the evidence, the trial court found the Agreement was not unconscionable and was binding on the parties. Citing *In re Marriage of Carter*, 862 S.W.2d 461, 468 (Mo.App.1993), the trial court found that while Husband disputed the Agreement at trial, he accepted the "benefits of the [A]greement by taking possession of personal property ..., selling and disposing of personal property awarded to him in the written [A]greement, transferring property to [Wife], ... filing joint tax returns with [Wife], and

taking other actions consistent with ..." the Agreement. As such the trial court determined Husband "by his actions and accepting the benefits of the written [Agreement] ... is estopped from questioning the existence, validity, enforceability, and effect of the written [A]greement herein," and Husband cannot "be allowed to assume the inconsistent position of affirming the ... [A]greement herein in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations or burdens."

Despite a provision in the Agreement that should Husband's income "drop dramatically, [the issue of maintenance] may be re-evaluated at [Husband's] expense," the trial court modified the Agreement so as to award Wife *nonmodifiable* maintenance of $1,200.00 per month for a period of forty-eight months and incorporated the Agreement into its judgment. The trial court also assigned all post-separation debts to each spouse as they were accrued; ordered Husband to pay Wife's attorney fees as set out in the Agreement; and divided the parties' property per the terms of the Agreement. This appeal followed.

The standard for reviewing a judgment of dissolution is the same as in any court-tried action. *Rivers v. Rivers*, 21 S.W.3d 117, 121 (Mo.App.2000). The decree must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Farnsworth v. Farnsworth*, 108 S.W.3d 834, 837 (Mo.App.2003). "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum*, 128 S.W.3d 62, 65 (Mo.App. 2003). Additionally, we defer to the trial

court's determinations of credibility· in making our review. *In re Marriage of Colley,* 984 S.W.2d 163, 166 (Mo.App.1998).

In Husband's first point, he asserts the trial court failed to "determine the amount of attorney fees to be paid by [Husband]." In that this point is dispositive, we solely address it in this opinion.

 In the present matter the Agreement set out that Husband "shall pay all reasonable attorney fees and court costs left in the dissolution of the marriage of the parties." In its Findings, the trial court found "[t]he parties' written ... Agreement is approved, attached hereto ... and incorporated herein and the parties are ordered to comply with the terms of said [A]greement." Thereafter, in its Judgment and Order the trial court recited "[t]hat the payment of attorney fees and the costs of this action is ordered pursuant to the terms of the ... ˙Agreement." However, neither the Agreement nor the trial court's Judgment and Decree of Dissolution of Marriage set out a sum certain as to the attorney fees to be paid by Husband. Also, given the ˙circumstances of the case, the language in the Agreement which sets out that Husband is responsible for "all reasonable attorney fees and court costs *left* in the dissolution of the marriage of the· parties" is vague and indefinite.

 It has been held that "[p]rovisions in a judgment should be definite; indefinite provisions are void and unenforceable." *Skalecki v. Small,* 951 S.W.2d 342, 345 (Mo.App.1997); *see In re Marriage of Brooke,* 773 S.W.2d 496, 498–99 (Mo.App. 1989). "With some minor exceptions, the 'provisions in dissolution decrees must be sufficiently certain to be susceptible of enforcement in the manner provided by law without requiring external proof, and if it does not satisfy this requirement such provision is void.' " *Farnsworth,* 108 S.W.3d at 843 (quoting *Hunt v. Hunt,* 65 S.W.3d 572,

577 (Mo.App.2002)); *see Brooke,* 773 S.W.2d at 499.

 Here, the effect of the trial court's ruling requiring Husband to pay Wife's "reasonable" attorney fees which are "left" in the dissolution action can only be ascertained by the trial court's hearing additional evidence on the issue of attorney fees and making a finding as to that amount. *See id.* Further, the use of the phrase "reasonable attorney fees and court costs left in the dissolution of the marriage of the parties" is vague and similarly uncertain. As it stands, the trial court's judgment is indefinite and uncertain such that it is void ˳and unenforceable. *See Brooke,* 773 S.W.2d at 499. Judgments which are "void and unenforceable [prevent] an appellate court from obtaining jurisdiction, requiring a dismissal." *Sunbelt Envtl. Servs., Inc. v. Nielsen,* 75 S.W.3d 889, 892 (Mo.App.2002). Appeal dismissed.