**Sandra Ray COFFMAN, Respondent,**

v.

**Elvin Cale COFFMAN, Appellant.**

**No. WD 70028.**

Missouri Court of Appeals, Western District.

Dec. 29, 2009.

David Slaby, for Respondent.

Corey M. Swischer, for Appellant.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and JAMES E. WELSH, Judge.

VICTOR C. HOWARD, Judge.

Elvin Coffman (Husband) appeals the judgment of the trial court awarding maintenance to Sandra Coffman (Wife). He claims that the maintenance award was against the weight of the evidence and that the trial court erred in failing to make findings of fact and conclusions of law requested by him under Rule 73.01(c). The judgment is affirmed.

### Factual and Procedural Background[1]

Husband and Wife were married in 1982 and subsequently resided in Hume, Missouri. Husband worked at General Motors in Kansas City for nearly five years before the parties married. He continued his employment and accrued pension service time at GM until he became disabled and retired early in March 2003.

Wife received her GED in 1983 and has no other formal education or training. She raised the parties' children and worked several part-time jobs during the

---

1. Wife filed a motion to strike Husband's appellant brief claiming that the statement of facts is not fair and concise. The motion was taken with the case. Rule 84.04(c) requires that the statement of facts "be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Husband's statement of facts is argumentative and sets forth only the facts favorable to him and not those supporting the trial court's judgment. Husband's statement of facts fails to comply with Rule 84.04(c). Nevertheless, the claim is reviewed on the merits. The motion to strike appellant's brief is denied.

marriage. She worked as a cashier at Price Chopper, drove a school bus for a year, and worked as a waitress for a short time. She also worked for ten years as an assistant cook at a school and worked as a receptionist at a hospital and a cashier at Country Mart. The highest hourly rate earned by Wife during the marriage was $6.50.

In 2001, Husband began wildly spending money and incurring substantial debt without Wife's knowledge. He purchased at least six new vehicles that were all either repossessed or returned to the dealership. He wrote a bad check for approximately $40,000 to purchase cattle and miscellaneous junk items. He spent approximately $100,000 refurbishing the parties' son's house. Husband quit making the mortgage payments on the marital home, and it was eventually foreclosed on. He sold all of the parties' GM stock and depleted the GM savings account, which at one time had a balance of approximately $100,000. As a result of Husband's behavior, the couple was forced to declare bankruptcy.

The parties separated, and Wife filed a petition for dissolution of marriage in April 2002. The next month, Husband's father, James Coffman, was named Husband's guardian and conservator by order of the probate division of the Bates County Circuit Court. Husband was eventually deemed permanently and totally disabled due to physical (degenerative arthritis) and mental (bipolar) disorders. At the time of trial in July 2007, he was living with his son and receiving disability pension benefits from GM in the amount of $1063.55 per month and Social Security disability benefits of $1944.90 for a total of $3008.45 a month.

A few months after the separation, Wife's parents loaned her money to pur-

chase a seventeen-year-old trailer home in Foster, Missouri. She began working full-time for Peterson Manufacturing Company in Grandview in September 2002. She drives approximately 150 miles a day to and from work. At the time of trial, Wife earned $14.05 an hour. She also received health, dental, and vision insurance from Peterson for $10 a week.

The case was originally tried in November 2004, and the trial court entered its judgment in April 2005 dissolving the parties' marriage, setting aside their nonmarital property, and dividing marital property.[2] The trial court awarded Wife one-half of 19/24ths of pension benefits Husband was receiving. Husband appealed to this court claiming that the trial court erred in finding his pension payments from GM were marital and awarding Wife a portion of them. This court agreed, holding that the pension benefits Husband receives up until he turns 65 years old are meant to replace his earnings due to disability and are, therefore, a nonmarital asset; while benefits Husband receives after he reaches 65 years old are meant to serve as deferred compensation and are marital. *Coffman v. Coffman*, 215 S.W.3d 309, 312 (Mo.App. W.D.2007). The trial court's judgment was, therefore, reversed, and the cause remanded for entry of a judgment properly apportioning the marital and nonmarital aspects of Husband's pension and for reconsideration, if necessary, of maintenance and the division of martial property and debts. *Id.* at 313.

Following remand and rehearing, the trial court issued its judgment in April 2008. The court set aside to Husband pension payments he receives until he reaches normal retirement age as his separate property and awarded Wife one-half of 19/24ths of the marital portion of the

2. The parties' children were emancipated at the time of the divorce.

GM retirement benefit. It also awarded Wife $600 per month in maintenance effective August 2007 and $2400 in attorney's fees.

Husband subsequently filed a motion to amend the judgment requesting the court to order restitution from Wife to Husband for pension benefits she erroneously received after the first judgment. The trial court issued an amended judgment in July 2008 finding that restitution in the amount of $7799 is satisfied by the attorney's fees award and by maintenance ordered from August 2007 through March 2008. This appeal by Husband followed.

### Standard of Review

A decree of dissolution will be upheld on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Farris v. Farris,* 75 S.W.3d 345, 347 (Mo.App. W.D. 2002). The evidence is viewed in the light most favorable to the decree, and all contrary evidence is disregarded. *Henning v. Henning,* 72 S.W.3d 241, 245 (Mo.App. W.D.2002). "The party challenging the dissolution judgment has the burden of demonstrating error." *Id.*

A trial court has broad discretion in determining whether to award maintenance, and its decision will not be reversed absent an abuse of discretion. *Farris,* 75 S.W.3d at 347. A trial court abuses its discretion if its decision is against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 399 (Mo. banc 2001).

### Maintenance

■ In his first point on appeal, Husband claims that the maintenance award to Wife was against the weight of the evidence because (1) the evidence did not support a finding that Wife could not meet her own reasonable needs through appropriate employment and (2) the evidence showed that Husband did not have sufficient income to pay a maintenance award.

■ A trial court may award maintenance to a spouse if it finds that the spouse: (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs; and (2) is unable to support herself through appropriate employment. § 452.335.1, RSMo 2000; *Donovan v. Donovan,* 191 S.W.3d 702, 705 (Mo.App. W.D. 2006). "The spouse seeking maintenance has the burden of establishing these threshold requirements." *Donovan,* 191 S.W.3d at 705. In determining whether to award maintenance, the trial court first determines the reasonable needs of the spouse seeking maintenance and then decides whether that spouse is able to meet those needs through the use of property or appropriate employment. *Comninellis v. Comninellis,* 147 S.W.3d 102, 106 (Mo.App. W.D.2004). " 'Reasonable needs' is the standard for determining the expenses properly allowable to a spouse seeking maintenance." *Id.*

Once the trial court determines that maintenance is warranted, it must consider the following factors in determining the amount and duration of maintenance:

(1) The financial resources of the party seeking maintenance, including martial property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable

the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.

§ 452.335.2, RSMo 2000; *Sweet v. Sweet,* 154 S.W.3d 499, 504–05 (Mo.App. W.D. 2005). "The court is to apply the factors so as to balance the reasonable needs of the spouse seeking maintenance against the ability of the other spouse to pay." *Sweet,* 154 S.W.3d at 505.

 The evidence, viewed in the light most favorable to the judgment, demonstrated that Wife established the threshold requirements to warrant an award of maintenance. Wife testified to monthly expenses of $2741.[3] These monthly expenses include $127 for payment on a loan for the lot on which her trailer sits, $9.70 in real estate taxes, $45 for insurance, and $383 for utilities ($75 electricity, $73 propane, $25 water, $75 home telephone, $16 trash service, $59 cable, $60 cell phone). Wife also pays $150 a month for prescription medication for her health problems including irritable bowel syndrome, depression, and allergies. In addition, Wife drives approximately 150 miles a day for work resulting in a need for reliable transportation and relatively high expenses for gas and maintenance. Her monthly expenses regarding her car include a $346 car loan, $500 for gasoline, $40 for car maintenance (oil changes), $14.30 for personal property tax, and $78 for auto insurance. Wife further testified that to meet her expenses, she must borrow from her parents and incur credit card debt. She owes her parents $5000 for her trailer and another $15,000 for financial assistance her parents have provided to her on a number occasions since the parties separated. Wife's parents cashed in a certificate of deposit, incurred credit card debt, and borrowed against their own home to make these loans to Wife, and the loans must be repaid. Wife's monthly expenses include payments of $170 to her parents for the trailer loan and $283 for the other loan. She testified that she has not, however, been able to afford to make these loan payments since April 2005. Wife also has three credit cards with a total balance of $4520 and total minimum monthly payments of $127. Finally, Wife's monthly expenses include $75 for cleaning products and laundry, $20 for over-the-counter medicines, $20 for personal hygiene and beauty, $8 for a haircut, $275 for food, $20 for clothing, $10 for household furnishings,

**3.** Several income and expense statements of both parties were admitted into evidence. The record on appeal, however, does not contain these statements. Under Rule 81.12(c), the appellant has the burden to provide the appellant court with a record on appeal that is sufficient to permit it to review the appellant's claims of error. *Ratcliff v. Sprint Mo.,*

*Inc.,* 261 S.W.3d 534, 549 (Mo.App. W.D. 2008). Where exhibits are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant. *O'Bernier v. R.C. & Assocs., Inc.,* 47 S.W.3d 422, 423 (Mo.App. S.D.2001).

and $40 for special occasions (birthday and Christmas gifts). These expenses constituted Wife's reasonable needs.

It is undisputed that Wife lacks sufficient property to provide for her reasonable needs. She had no separate property, and Husband depleted most of the parties' assets during the marriage. He stopped making mortgage payments on the marital home and it was foreclosed on. Husband also purchased numerous new vehicles without Wife's knowledge or consent. He spent approximately $100,000 refurbishing the parties' son's house. He sold all of the GM stock that the parties acquired during the marriage and depleted the GM savings account that at one time had a balance of almost $100,000. The only marital property of significance remaining for the trial court to divide was Husband's future pension benefits. The trial court awarded Wife one-half of the marital portion of those benefits; however, she will not begin receiving the benefits until Husband, who was 48 years old at the time of the rehearing, reaches normal retirement age. The evidence was sufficient that Wife lacks sufficient property to provide for her reasonable needs.

The evidence further demonstrated that Wife is unable to support herself through appropriate employment. Wife has a GED and no advanced training. During the marriage, she worked only part-time jobs as a cashier, bus driver, school cafeteria assistant cook, and hospital receptionist. The highest wage she ever earned during the marriage was $6.50 per hour. Wife works full-time at Peterson Manufacturing in Grandview earning $14.05 per hour. She has health, dental, and vision insurance through her employer for $10 per week. Her monthly take-home pay is $1785. Wife's employment at Peterson is more than appropriate based on her education, training, and work experience. Yet despite earning an income to the best of her abilities and circumstances, Wife is unable to meet her reasonable needs. An award of maintenance was warranted in this case.

■ Furthermore, sufficient evidence was presented to support the amount of maintenance awarded based on the factors of section 452.335.2. The parties were married nineteen years before they separated. During the marriage, they lived in a five-bedroom home worth approximately $110,000 and managed to save nearly $100,000 until Husband's erratic behavior wiped out the marital assets. Wife is now living in a seventeen-year-old two-bedroom trailer that is "falling apart." She lacks the financial resources to meet her needs independently. And despite his contention to the contrary, sufficient evidence was presented that Husband has the ability to pay the $600 a month maintenance award. Husband receives Social Security disability and GM disability pension benefits in the amount of $3008.45 a month. At trial, Husband claimed total monthly expenses of $2876. The trial court, however, found Husband's claimed expenses to be excessive and unnecessary. Husband and his father, Husband's guardian and conservator, testified regarding Husband's expenses and submitted an income and expense statement that was prepared based on only one previous month's expenses. The statement included expenses for two vehicles and claimed a gasoline expense of $600 to $700 a month. Husband also spent $290 dining out at restaurants in addition to $300 he spends monthly for food. Specifically, the court found, "[Husband's] use of assets, for just driving around and visiting with an approximate expenditure of $600 to $700 monthly for gasoline and more for non-necessities, indicates that he has extra resources to provide maintenance for [Wife]."

Additionally, the evidence regarding Husband's expenses was conflicting. Wife introduced an income and expense statement submitted by Husband in discovery a few months before trial. The exhibit was prepared based on Husband's father/conservator's knowledge of his son's expenses over a four or five year period. This income and expense statement claimed expenses of $2074. Wife also introduced an expense sheet submitted on Husband's behalf in May 2006 in the probate court showing claimed expenses of $2142 a month. The trial court had sufficient evidence to determine that Husband had the ability to pay maintenance of $600 a month. The trial court did not abuse its discretion in awarding maintenance. The point is denied.

## Findings of Fact and Conclusions of Law

In his second point on appeal, Husband claims that the trial court erred in failing to make findings of fact and conclusions of law as requested by him under Rule 73.01(c). Rule 73.01(c) provides:

> If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded. The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party.

However, Rule 78.07(c) requires that allegations of error relating to the language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment to be preserved for appellate review. *Gipson v. Fox*, 248 S.W.3d 641, 644 (Mo. App. E.D.2008); *G.J.R.B. ex rel. R.J.K. v. J.K.B.*, 269 S.W.3d 546, 555 n. 3 (Mo.App.

S.D.2008). The broad language of Rule 78.07(c) encompasses complaints regarding required findings whether mandated by statute or Supreme Court Rule. Prior to trial, Husband generally requested the trial court to make findings of fact and conclusions of law pursuant to Rule 73.01(c). He, however, did not raise the issue of the trial court's failure to make specific findings in his motion to amend the judgment. The issue is, therefore, not preserved for review.

Husband also argues that the trial court failed to state whether the maintenance award was modifiable or nonmodifiable. However, he raises this argument only in the argument part of his brief, not in the point relied on. Issues raised only in the argument section of a brief are not preserved for appellate review. *In re Care & Treatment of Burgess v. State*, 72 S.W.3d 180, 184 (Mo.App. S.D. 2002). Nevertheless, although a maintenance order must state whether it is modifiable or nonmodifiable under section 452.335.3, RSMo 2000, if the order does not state whether it is modifiable and the award of maintenance was based on need, it is presumed to be modifiable. *Sprouse v. Sprouse*, 969 S.W.2d 836, 838 (Mo.App. W.D.1998). The maintenance award in this case was based on Wife's need; therefore, it was modifiable. The point is denied.

The judgment is affirmed.

All concur.