**Sherri PICKERING, Respondent,**

v.

**William Timothy PICKERING, Appellant.**

**No. WD 71489.**

Missouri Court of Appeals, Western District.

July 6, 2010.

Michelle Illig, Overland Park, KS, for Appellant.

Carmen J. Carter, Raymore, MO, for Respondent.

Before Division I: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and CYNTHIA L. MARTIN, Judges.

KAREN KING MITCHELL, Presiding Judge.

Appellant William Timothy Pickering ("Husband") appeals the judgment entered by the Circuit Court of Cass County, the Honorable Daniel W. Olsen presiding. The circuit court's judgment dissolved Husband's marriage to Respondent Sherri Pickering ("Wife"); awarded joint custody of the parties' children; entered a parenting plan; calculated and ordered child support for Husband to pay to Wife; divided marital assets between the parties, finding that Husband owed Wife an equalization payment; and awarded Wife her attorney's fees. Husband raises thirteen points on appeal, challenging almost every aspect of the circuit court's judgment. We affirm in part, reverse in part, and give such judgment as the trial court ought to have given. Rule 84.14.[1]

### Facts and Procedural Background[2]

Husband and Wife married in 1990. They had two children who, at the time of trial, were seventeen and thirteen years old.

On December 25, 2006, Husband informed Wife that he had been unfaithful and that he wanted to dissolve the marriage. The parties officially separated in May of 2007. On May 24, 2007, Wife filed a petition to dissolve the marriage.

From May of 2007 until August of 2008, Husband made mortgage payments on the marital home. Wife lived in the home, and Husband lived in an apartment. The mortgage on the marital home ("the mortgage") varied between $1,900 per month and $2,167 per month. Husband also paid $811 per month in rent for his own apartment. Upon selling the marital home in August of 2008, the parties agreed that Husband would pay Wife $750 per month as child support. Before that time, Husband had not paid any child support or maintenance. According to an understanding between the parties,[3] before they sold the marital home, Husband had paid the mortgage in lieu of paying child support and maintenance.

According to Husband, while he was paying the mortgage, his expenses exceeded his income, and therefore he liquidated various marital assets so that he could continue making the mortgage payments. He did so without informing Wife and without giving her any of the proceeds. These assets were a 401k worth $44,561.40 (after penalties and taxes, Husband received $31,200); a truck worth $8,800; and a generator worth $1,400 (collectively, "liquidated marital assets").

---

1. Rule citations are to Missouri Supreme Court Rules (2010).

2. We view the facts in the light most favorable to the judgment. *Coffman v. Coffman*, 300 S.W.3d 267, 270 (Mo.App. W.D.2009).

3. Husband vigorously disputes this point, claiming that he only agreed to pay $1,900 worth of the mortgage, but, as noted, we view the facts in the light most favorable to the judgment.

The circuit court held a bench trial on March 6, 2009. At trial, Wife argued that Husband squandered the liquidated marital assets. The court found that Husband had failed to prove that he used the proceeds of these assets for legitimate purposes. Husband spent a portion of the money on a trip to Las Vegas with his girlfriend (although she paid her own expenses), which the court found did not qualify as a legitimate expenditure. Further, the court found that Husband could only account for $27,500 of the funds ($12,000 of which was paid to Husband's attorneys), which was "far less than the proceeds of the sale of the three marital assets." Therefore, the court attributed $20,000 to Husband in the division of marital assets ("$20,000 attribution"). However, the court did not explain how it arrived at $20,000.

The trial court found that the parties had other marital assets totaling $28,798.82. To calculate the total amount of marital assets, the court added the $20,000 attribution to the $28,798.82 in other assets. Husband was in possession of an account worth $6,571. Thus, the court found that $26,571 (the $20,000 attribution plus value of the account) worth of marital assets were effectively in Husband's hands. The court ordered the marital assets divided equally. As noted, the total amount of marital assets was $48,798.92. One-half of that is $24,399.41. Because the court had found that Husband already effectively had $26,571 in his hands, it ordered Husband to pay Wife the difference between that amount and one-half of the total marital assets, or $2,171.59 ("equalization payment").

The trial court also awarded Wife her attorney's fees. The court found that Husband was in a better financial position to pay the fees and that his conduct during the marriage, including infidelity and the unauthorized liquidation of marital assets, entitled Wife to an attorney's fee award.

The trial court further ordered Husband to pay child support in the amount of $956 per month. In calculating child support pursuant to Missouri Supreme Court Rule Form 14 ("Form 14"), the court attributed an income of $2,732 per month to Wife and $6,944 per month to Husband. The court also found that Wife paid $246 per month in "Other extraordinary child rearing costs" and ordered Husband to pay his proportional share of that amount.[4]

Husband argued that the court should impute more income to Wife than she was currently earning as a teacher. Wife had worked as a nurse until 2004, when she and Husband agreed that she should become a teacher, so that she could spend more time with the children. Husband testified that Wife had the capacity to make more money as a nurse and also that she could make more money as a teacher in a different school district. Husband asked the trial court to impute $3,000 per month as Wife's income, which was more than she currently made but less than what he thought she could make as a nurse. The trial court refused to impute income to Wife, calculating her income as $2,732 per month (her actual salary at the time of trial). Further, Husband argued that his income should be less than the $6,944 projected by the court in its Form 14 because, although that amount was close to his monthly income at the time of trial, that figure was based in part on commissions that he earned, and there was no guarantee that he would continue to earn commissions at his current rate.

The court awarded joint legal and physical custody of the children. Previous to

4. The court also noted in the margin of its Form 14: "One Child: $767.00."

the court's order, the children alternated weeks residing with each parent, and the children testified that they wished to continue with this arrangement. Husband asked the court to preserve this arrangement, and Wife asked that the court order that the children were to reside with her, except for every other weekend, Wednesday evenings, and alternating weeks in the summer. The court ruled that the children would reside with Wife except every other week from 6:00 p.m. Friday until Thursday morning the following week. In the summer, custody would alternate one week with Husband, the next with Wife.

Prior to their separation, the parties had always purchased health insurance for their children, separate from that available to them through the insurance provided by Husband's employer. They did so because Husband frequently changed jobs, and they wanted the children's health insurance to remain constant. Husband asked the court to order the parties to change the children's insurance from their current plan to the plan provided by Husband's employer, because the latter was less expensive. Wife testified that she wanted to keep the children on their current insurance policy because, as before, Husband's employment was subject to change, and the children's current policy covered preexisting conditions and could be maintained after the children went to college. The trial court rejected the husband's request, ordering Wife to provide health insurance for the children and the parties to each pay 50% of the children's uninsured medical expenses.

The trial court entered judgment on April 30, 2009. On May 27, 2009, Husband filed a motion to amend the judgment. On August 7, 2009, the court held a hearing on

Husband's motion. That same day, the court filed its Amended Judgment of Dissolution, which amended its original order in ways that are not relevant here.[5] On September 8, 2009, Husband filed a second post-trial motion, which the court denied for lack of jurisdiction. This appeal follows.

## Standard of Review

In a court-tried case, our standard of review is that explained in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Martin v. Dir. of Revenue*, 248 S.W.3d 685, 687 (Mo.App. W.D.2008). Accordingly, we will affirm the circuit court's judgment unless (1) it is against the weight of the evidence; (2) it is not supported by substantial evidence; or (3) the circuit court misstated or misapplied the law. *Id.* "The evidence is viewed in the light most favorable to the [dissolution] decree, and all contrary evidence is disregarded." *Coffman v. Coffman*, 300 S.W.3d 267, 270 (Mo.App. W.D.2009).

## Legal Analysis

Husband argues thirteen points on appeal. For the sake of brevity and convenience, we group them into eight categories: the adoption of wife's proposed judgment and plan; squandered assets; equalization of assets; retroactive maintenance; child support; medical insurance; the parenting plan; and attorney's fees.

## I. Adoption of Wife's Proposed Judgment and Parenting Plan

■ Husband argues that the trial court erred in adopting Wife's proposed judgment and parenting plan. We disagree, both because the error, if any, is not re-

---

5. The court's orders and findings noted above refer to the Amended Judgment of Dissolution ("judgment").

versible in and of itself and because Husband failed to preserve it.

■ Although the verbatim—or near verbatim—adoption of a party's proposed judgment is strongly disapproved of, to do so is not per se reversible error and does not alter this court's standard of review. Accordingly, the circuit court's adoption of most of Wife's proposed judgment does not constitute reversible error, and we will affirm the judgment unless it cannot satisfy the *Murphy v. Carron* standard. *Neal v. Neal,* 281 S.W.3d 330, 337–38 (Mo.App. E.D.2009); *Stelling v. Stelling,* 769 S.W.2d 450, 452–53 (Mo.App. W.D.1989) (holding that, despite the circuit court's adoption of a party's proposed judgment, we would presume that the court correctly applied the law unless the record contradicted that presumption).

Moreover, in a court-tried case, defects in the form or language of the judgment must be raised in a motion to amend the judgment in order to be preserved for appellate review. Rule 78.07(c). Here, Husband filed a motion to amend the judgment, but he failed to cite as error the circuit court's adoption of Wife's judgment. To the extent the trial court's reliance on Wife's proposed judgment can be said to constitute a defect, it is a defect in the form and/or language of the judgment. Such defects must be cited in a motion to amend the judgment; otherwise, they are abandoned. *Id.* Since Husband did not preserve this issue, we need not review it. Point denied.

## II. Squandered Assets

■ Husband argues that the trial court erred in finding that he had squandered $20,000 in marital assets. We disagree.

A spouse, claiming that a marital asset is being secreted or was squandered by the other spouse in anticipation of a dissolution proceeding, must introduce evidence demonstrating that there existed at some point a marital asset, which is being secreted or was squandered. Once such evidence is introduced, while the burden of proof remains with the spouse claiming that the other has secreted or squandered the marital asset in question, the burden of going forward with the evidence shifts to the other spouse to account for the claimed secreted or squandered asset by presenting evidence as to its whereabouts or disposition.

*Farnsworth v. Farnsworth,* 108 S.W.3d 834, 841 (Mo.App. W.D.2003) (internal quotations and citations omitted).

■ Here, Husband admitted that he liquidated marital assets but testified that he spent the funds on everyday living expenses. However, although liquidating marital assets in order to pay legitimate living expenses does not constitute "squandering," *id.* at 842, *Lawrence v. Lawrence,* 938 S.W.2d 333, 338 (Mo.App. W.D.1997), it is within the trial court's discretion to disbelieve a spouse's testimony that he or she used the proceeds of a liquidated marital asset for such purposes. *Franklin v. Franklin,* 213 S.W.3d 218, 226 (Mo.App. E.D.2007) ("[A]lthough Husband testified he lost the house because he lacked the funds to pay the mortgage, based on the evidence, the trial court was free to disbelieve his testimony" and conclude instead that he squandered the asset.); *Loomis v. Loomis,* 158 S.W.3d 787, 791 (Mo.App. E.D.2005).

Here, the trial court found that, despite his testimony that he used the proceeds from the liquidated assets on living expenses, Husband had squandered the liquidated assets. As noted, we owe deference to the trial court's finding on this point, *Loomis,* 158 S.W.3d at 791, and we will

affirm unless there is no substantial evidence to support it. *Sinclair v. Sinclair,* 837 S.W.2d 355, 359 (Mo.App. W.D.1992) ("[I]t is within the trial court's authority to order reimbursement of squandered funds, if there is substantial evidence that one spouse squandered marital property in anticipation of divorce.").[6]

There was substantial evidence that Husband squandered the liquidated assets. Husband liquidated his 401k, a marital asset worth $44,561.40, without consulting Wife before doing so and without informing her or dividing the proceeds with her after the fact. In doing so, he incurred $13,361 in taxes and fees that would not otherwise have been incurred. He also sold two marital assets, a truck for $8,800, and a generator for $1,400. Husband did not divide the proceeds from these sales with Wife. In total, Husband received $41,400 in marital funds, none of which was available for division at the time of trial. As such, the burden shifted to Husband to come forward with evidence as to the whereabouts of these funds. *Farnsworth,* 108 S.W.3d at 841.

Husband did not meet that burden. Husband testified that he spent the money on attorneys' fees ($12,000), miscellaneous credit card debt ($4,000), taxes ($7,000), savings for the children ($2,000), furniture ($2,500), and on an alleged "negative cash flow"[7] during the period that Husband was paying the mortgage on the marital home ("relevant period"). However, the trial court did not credit Husband with a negative cash flow, and, accordingly, it found that Husband had only accounted for $27,500 of the liquidated assets, "far less than the proceeds ... which total[ed] $41,400."

■ Husband argues that the trial court erred in ignoring his alleged negative monthly cash flow. We disagree. In determining whether funds were squandered or whether they were legitimately expended on everyday items, the trial court has substantial discretion. *Sinclair,* 837 S.W.2d at 359. During the relevant period, Husband, in lieu of child support, was paying the mortgage, which was initially $1,900 a month but then increased to $2,167 a month. Husband was paying no other marital expenses, such as child support or maintenance. On appeal, Husband argues that his net income during the relevant period was $4,641 per month. However, Husband represented to the trial court that his net income before trial was $5,190 per month. Thus, there was a positive difference (of either $2,474 or $3,023) between Husband's monthly income and his *de facto* support payments. Husband testified that that amount was insufficient to meet his other expenses, but the trial court was not obligated to believe Husband, nor was it obligated to accept the legitimacy of all of Husband's alleged expenses.[8] *See id.* (deferring to the trial

---

6. We will not reverse the trial court on the ground that it failed to specifically find that the spouse expended marital assets *in anticipation* of divorce. *See Loomis,* 158 S.W.3d at 791 ("A trial court does not have to specifically find that it believes monies have been secreted or squandered in anticipation of divorce, because its actions can imply such a conclusion where sufficient evidence exists to support the conclusion."). It is enough that there is substantial evidence to support a finding that the spouse squandered assets and

that a divorce was anticipated or imminent. *See id.*

7. At trial, Husband did not testify to a specific amount of negative cash flow, but on appeal he totals it at $17,264.

8. The parties spent much of trial submitting evidence and making arguments on the issue of whether Husband was living an extravagant lifestyle during the relevant period or whether Husband spent the marital funds on legitimate expenses. We need not address

court's determination that a spouse's expenses were legitimate); *Farnsworth*, 108 S.W.3d at 842 (affirming trial court's determination that the husband's imputed income was sufficient to meet his legitimate expenses despite his testimony to the contrary). Accordingly, the trial court was within its discretion in ignoring Husband's alleged negative cash flow.

It follows that Husband only accounted for $27,500 of the $41,400 he received in liquidated marital assets.[9] Given that Husband failed to account for the full value of the liquidated marital assets, he failed to meet his burden of producing evidence of the whereabouts of the liquidated sums. *Farnsworth*, 108 S.W.3d at 841. Thus, the trial court did not err in finding that Husband had squandered marital assets.

Once it had been established that Husband squandered assets, the trial court had substantial discretion in determining the precise amount of squandered assets attributable to Husband. *See id.* at 841–42 (affirming the trial court's determination that the entire amount of liquidated sums was properly considered to be marital property despite the wife's concession that her husband had used a portion of the liquidated sums to pay legitimate living expenses). And, although the trial court did not explain how it arrived at the $20,000 figure, there was substantial evidence to support the court's attribution of at least that amount to Husband, given that (1) $13,900 remained unaccounted for; (2) $13,361 was lost due to Husband's uni-

lateral decision to incur taxes and fees by liquidating his 401k; and (3) other expenses were of questionable legitimacy.

Accordingly, there was substantial evidence to support the trial court's attribution of $20,000 to Husband, and the court did not abuse its discretion in so doing. Point denied.

## III. Equalization of Assets

Husband next argues that the trial court erred in ordering him to pay an equalization payment to Wife of $2,171.59. We disagree.

■ In a dissolution proceeding, the trial court "shall divide the marital property and marital debts in such proportions as the court deems just." § 452.330.1.[10] "The trial court has broad discretion in the division of marital property and its distribution will only be disturbed on appeal if the distribution of marital property is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Fitzwater v. Fitzwater*, 151 S.W.3d 135, 136 (Mo.App. W.D.2004). In order to disrupt the trial court's equalization of marital assets, we must find that the trial court abused its discretion. *Johnson v. Johnson (In re Marriage of Johnson)*, 817 S.W.2d 666, 670 (Mo.App. S.D.1991).

■ Here, the trial court divided the marital property equally between the two parties and found that, after taking into account the property that each party possessed at the time of trial, Husband owed

this, apart from holding that the trial court was within its discretion in ignoring Husband's alleged negative monthly cash flow, given that Husband had a $2,474 to $3,023 positive difference between his monthly income and his monthly marital obligation. *Spinabella v. Spinabella*, 293 S.W.3d 34, 37 (Mo.App. S.D.2009) ("The fact that husband's income during the separation was more than

adequate to meet his living expenses dispels his claim that the IRA funds were needed for the purposes he now says they were used.").

9. That figure includes $12,000 in attorneys' fees and $4,000 in miscellaneous credit card debt.

10. Statutory references are to RSMo 2000.

Wife the equalization payment. Husband argues that the trial court failed to take into account all marital property. However, unless a spouse proves that the other squandered a marital asset, the trial court may only consider assets that exist at the time of trial. *Farnsworth*, 108 S.W.3d at 841. At trial, Husband did not attempt to prove that Wife squandered any assets.[11] Thus, in order to have assets and/or liabilities included within the trial court's equalization, Husband was required to show that they existed at the time of trial. *Id.*

Here, Husband argues that the trial court erred in failing to account for the following marital assets and liabilities: (1) Wife's 2007 $5,000 tax refund; (2) Husband's 2007 $7,000 tax liability; (3) Wife's 2008 tax refund; (4) Husband's 2008 tax liability; (5) $701.95 of personal property taxes that Husband paid; (6) $1,000 of equity contained within the wife's van; (7) mortgage payment late fees; and (8) unspecified "additional marital debt." However, Husband did not meet his burden in proving that these assets and liabilities existed at the time of trial.

### a. Assets

■ The assets cited by Husband were properly excluded from the trial court's division of assets because they did not exist at the time of trial. *See id.* Although Wife's 2007 tax refund was a marital asset, there was no evidence submitted at trial to prove that the funds Wife received existed at the time of trial. The equity in the marital van was also a marital asset, but it did not exist at the time of trial.[12] Under these circumstances, the trial court did not err in failing to attribute

to Wife the 2007 tax refund and the equity in the van. *Id.*

### b. Liabilities

■ The liabilities cited by Husband were properly excluded from the trial court's division of assets because they did not exist at the time of trial. Marital debts, like marital assets, may only be divided when they exist at the time of trial. *See Donovan v. Donovan*, 191 S.W.3d 702, 708 (Mo.App. W.D.2006) (holding that *because* the wife's credit card debt existed at the time of trial, it could properly be included in the trial court's division of marital property). Although the taxes Husband paid in 2007 were a marital liability, there was no evidence that anything was still owed at the time of trial. The same is true for the property taxes, late fees, and unspecified "additional marital debt" Husband paid. Husband does not argue (and did not prove) that he paid any taxes, fees, or other debts with non-marital funds.[13] As such, the trial court did not err in failing to divide the debt equally between Husband and Wife.

### c. 2008 taxes

■ The alleged 2008 tax refund and tax liability were properly excluded from the trial court's division of assets because there was no evidence of any tax liability owed or tax refund due for 2008. Although it would be proper to consider tax liabilities and/or refunds accrued during the marriage as marital, neither party presented any evidence whatsoever at trial regarding any alleged liabilities owed or

---

11. Nor does he argue on appeal that Wife squandered assets.

12. The van had been traded in for a new car; the equity had been applied to the purchase price; and there was no evidence that, at the

time of trial, equity existed in Wife's new vehicle.

13. As noted above, Husband paid these debts with the proceeds of marital assets, which he liquidated and did not share with Wife.

refunds due for 2008 taxes.[14] Lacking evidence of a marital debt or asset in existence at the time of trial, the trial court did not err in failing to divide these alleged assets and liabilities. *Farnsworth,* 108 S.W.3d at 841.

Accordingly, the trial court did not err in failing to include the cited marital property in its judgment. Husband has filed a "motion to remand" this appeal on the basis that we lack jurisdiction unless and until the trial court divides the assets and liabilities discussed above. Since we find that the trial court did not err in failing to include these items in its judgment, we need not address any alleged jurisdictional defect. Point denied; motion denied.

## IV. Retroactive Maintenance

 Husband argues that the trial court erred in ordering "retroactive maintenance" for the period from May of 2007 until August of 2008. We disagree.

 Maintenance may only be awarded retroactive to the date when the receiving spouse filed a motion for temporary maintenance. *Colquitt v. Muhammad,* 86 S.W.3d 144, 149 (Mo.App. E.D.2002). Here, Wife did not file a motion for temporary maintenance, and Husband argues that the trial court was therefore barred from awarding retroactive maintenance. We reject Husband's argument because the court did not "award retroactive maintenance," but rather preserved the parties' pre-trial agreement.

 The court stated as follows: "The Court finds that the mortgage payments made by Respondent from May 2007 until August 2008 should be offset against his obligation to pay child support and maintenance for this period and therefore neither

party is entitled to monies due from the other during this period." Although the trial court used the term "maintenance," it is clear that it did not actually "award" maintenance for the relevant period, but rather simply approved of the parties' arrangement, whereby Husband had paid the mortgage until the marital home sold.

Importantly, this is precisely what both parties asked the trial court to do. When discussing Husband's payments made during the relevant period, Wife testified as follows:

Q So by Mr. Pickering making the mortgage payment, he actually equalized the earnings between you and your husband for purposes of maintaining the status quo during the time of the separation?

A Yes.

Q Are you asking the Court then to find that there is no overpayment of child support because of the fact of the matter that you did not have the ability to meet your reasonable needs based on the income and expenses that have been offered into evidence?

A Yes.

Likewise, on this same topic, Husband testified as follows:

Q You're asking the Court to find that your efforts to pay all of these financial obligations that you and Mrs. Pickering had incurred throughout the time this matter has been pending but in particular up until August '08, when the house sold that the Court take that into account in finding that you do not owe Mrs. Pickering some payment as has been suggested?

A That's correct.

14. Evidence was taken in March of 2009. Presumably, Husband could have put on evidence of any liabilities or refunds that ac- crued in 2008, even if the parties had not yet finalized their tax returns.

Q *You're not asking for Mrs. Pickering to pay you back. You think that it would be just if everybody is left where they're at as far as payments to each other to equalize this?*

A I think at this point that would be the best thing for everybody, *yes.*

(Emphasis added.)

■ Even in a court-tried case, where no post-trial motion is required to preserve substantive issues for appellate review, Rule 78.07(b), we cannot address arguments that the appellant failed to raise at trial. *Mark Twain Plaza Bank v. Lowell H. Listrom & Co.,* 714 S.W.2d 859, 865 (Mo.App. W.D.1986). Here, Husband specifically requested the trial court to order that neither party was owed anything for the relevant period, which is what the court did when it found that Husband's payment of the mortgage offset any marital obligations that he owed during the relevant period. Ergo, Husband did not properly preserve this issue for appeal.

Thus, the trial court made no "retroactive maintenance" award, and, even if the court's preservation of the status quo could be characterized as "retroactive maintenance," Husband would be barred from raising the point on appeal because he specifically asked the court to preserve the status quo for the relevant period. Point denied.[15]

## V. Child Support

Husband argues that the trial court erred in calculating child support. We agree in part.

### a. Income of Husband

■ Husband argues that the trial court erred in calculating child support in that, in doing so, it overestimated his yearly salary. We disagree.

■ Husband's argument on this point is that, in projecting his salary, the trial court erroneously took into account Husband's commissions.[16] The argument fails because Form 14 specifically states that commissions are a part of gross income.

"Gross income" includes, but is not limited to, salaries, wages, *commissions,* dividends, severance pay, pensions, interest, trust income, annuities, partnership distributions, social security benefits, retirement benefits, workers' compensation benefits, unemployment compensation benefits, disability insurance benefits, veterans' disability benefits, and military allowances for subsistence and quarters.

DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 1, Direction (emphasis added). Accordingly, the trial court did not err in considering Husband's commissions as a part of his gross income.[17]

---

**15.** Husband also argues that the trial court erred in calculating child support before it calculated the amount to award in maintenance. Since we find that the trial court did not award maintenance, we deny this point.

**16.** Husband also attempts to argue that the trial court should have averaged his incomes for the previous three years. However, this argument was not included within Husband's point on appeal and does not appear to have been presented below. Accordingly, it is abandoned. *Engeman v. Engeman,* 123 S.W.3d 227, 236 (Mo.App. W.D.2003) (hold-

ing that an argument must be presented in the point on appeal); *Mark Twain Plaza Bank,* 714 S.W.2d at 865 (holding that issues on appeal must have been made at trial).

**17.** Husband is correct that the trial court should only consider *bonuses* in projecting gross income after considering the relevant factors, *see* Form 14, Line 1, Comment D; however, the form contains no such limitation for commissions, which are always included within the definition of gross income for the purposes of Form 14. Bonuses are not at

### b. Income of Wife

 In the past, Wife has worked as a nurse, but, since 2004, she had been employed as a teacher. Husband argues that the trial court erred in not imputing the income of a nurse, rather than that of a teacher, to Wife in its calculation of child support. We disagree.

### 1. Preservation

It is questionable whether this issue—imputing the income of a nurse to Wife—has been preserved for our review. As noted above, we cannot address issues that were not presented to the trial court. *Mark Twain Plaza Bank,* 714 S.W.2d at 865. At trial, Husband testified as follows:

Q So on your Form 14, you haven't imputed what you really believe a full-time RN could earn in today's Kansas City market?

A No, I have not. Not even close. Probably 50 percent.

Then, at the post-trial hearing, Husband's counsel stated that Husband "never argued at trial or today that we attribute a nurse's income to [Wife].... [F]or [Wife's counsel] to argue that I suggested and that it was our position that we impute a nurse's income to [Wife] never happened, didn't happen at trial, didn't happen before trial in negotiations, . . . and didn't happen today."

Despite his testimony and the argument of his counsel, Husband argues on appeal that the trial court erred in failing "to impute a nurse's income to Wife." Husband did attach a note to his Form 14 stating that his projected income for Wife was based on an assumption of Wife's working nine twelve-hour days a month as a nurse. However, in light of Husband's testimony and the arguments made by his trial counsel, the trial court cannot be faulted for failing to impute a nurse's income to Wife.

### 2. Imputing income to Wife

Moreover, even if we assume that Husband properly placed the issue of imputing a nurse's income to Wife before the trial court, the court did not abuse its discretion in rejecting the argument.

 In calculating child support, it is within the trial court's discretion to impute income to one of the parents if he or she is underemployed. *Lokeman v. Flattery,* 146 S.W.3d 422, 427 (Mo.App. W.D. 2004). "Under proper circumstances, the trial court may impute income to a parent based on what that parent could earn through his or her best efforts to gain employment proportionate to his or her capabilities." *Id.*

 In considering whether to impute income to a parent, the trial court should consider all relevant factors, including "[t]he parent's probable earnings based on the parent's work history *during the three years,* or such time period as may be appropriate, *immediately before the beginning of the proceeding* and during any other relevant time period[.]" Form 14, Line 1, Comment H (emphasis added). Other factors include the parent's qualifications, the parent's employment potential, the availability of employment, and whether the parent is the custodian of a child whose condition or circumstances make it appropriate that the parent not seek employment outside the home. *Id.*

Here, Wife, through a mutual decision with Husband, decided to quit nursing and become a teacher in 2004, three years before the petition for dissolution was filed and five years before trial. As noted, the comments to Form 14 instruct the trial

issue here, and therefore Husband's argument is inapposite.

court to consider the parent's earnings in the three years previous to the beginning of the proceedings. Following that instruction, the trial court could properly have based its projected earnings for Wife based on her earnings as a teacher, as she had held no other job during the three years previous to filing the petition and the five years previous to trial.[18] Moreover, although both parties conceded that Wife could earn more working as a nurse than she made as a teacher, there was no evidence, beyond mere conjecture, as to how much she could make or as to whether she could in fact obtain a new nursing job. In addition, both parties testified that the younger child benefited from the hours at home that Wife's employment as a teacher afforded her.

Thus, assuming for the sake of argument that Husband properly put this issue before the trial court, the court did not abuse its discretion in failing to impute the income of a nurse to Wife, given that (1) Wife worked only as a teacher in the three years previous to the beginning of the proceedings; (2) there was scant evidence as to whether Wife could obtain a new nursing job or as to how much such a job would pay; and (3) both parties testified that the younger child would benefit from the hours Wife could spend at home by virtue of her employment as a teacher. Point denied.

#### c. Extraordinary expenses

Husband argues that the trial court erred in calculating the extraordinary expenses of the children. The trial court's Form 14 found that Wife paid $246.00 per month in extraordinary expenses and that Husband paid no amount in extraordinary expenses. First, Husband argues that none of the expenses claimed by Wife qualifies as an extraordinary expense of the children. Thus, Husband argues that the trial court erred in ordering him to pay his proportionate share of those expenses in addition to the basic child support amount that he is required to pay. Second, Husband claims that he pays the older son's car insurance and that the trial court erred in failing to treat that expense as an extraordinary expense. Thus, Husband argues that the trial court should have ordered Wife to pay her proportionate share of the older child's car insurance payment. We agree in part and disagree in part.

Line 6e of Form 14 instructs the trial court to factor "[o]ther extraordinary child rearing costs" ("extraordinary expenses") into the child support calculation. These costs include, but are not limited to, the following: "tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child." Form 14, Line 6e, Comment A; *Bauer v. Bauer*, 28 S.W.3d 877, 884 (Mo.App. E.D.2000). These expenses are not included in the basic child support calculation, but the trial court retains the discretion to include them in its final child support calculation. *Schild v. Schild*, 272 S.W.3d 329, 332–33 (Mo.App. E.D.2008). Moreover, the trial court has discretion to accept a spouse's testimony that such fees are actually incurred. *Gal v. Gal*, 937 S.W.2d 391, 396 (Mo.App. E.D. 1997). An award of extraordinary expenses "must not include a redundancy in the children's living expenses already, and must otherwise be just and reasonable." *Foraker v. Foraker*, 133 S.W.3d 84, 98 (Mo.App. W.D.2004).

---

**18.** The trial court also could have considered "any other relevant time period," but it was under no obligation to deem Wife's employment prior to 2004 relevant.

■ Here, Wife testified to a number of fees that she incurs in conjunction with the educational and athletic development of the children (e.g., athletic camps, various school-related fees, art classes, athletic equipment, etc.). These items fall within Form 14's definition of extraordinary expenses, as they could properly be characterized as "intended to enhance the athletic, social or cultural development of [the] child[ren]." Form 14, Line 6e, Comment A. As such, the trial court did not abuse its discretion in including within its child support calculation the educational and athletic costs testified to by Wife. *Schild,* 272 S.W.3d at 332–33 (holding that the trial court has discretion to award costs properly characterized as extraordinary expenses); *Gal,* 937 S.W.2d at 396 (holding that the trial court has discretion to rely on a spouse's testimony that expenses are incurred).

■ However, the trial court erred in including the children's cell phone costs as an extraordinary expense.[19] As noted, in order for an expense to qualify as an extraordinary expense, it should be related to an "activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]."[20] Form 14, Line 6e, Comment A. Moreover, an award of extraordinary expenses must not duplicate ordinary living expenses, *Foraker,* 133

S.W.3d at 98, which are covered by the presumed, basic child support amount. *See* Form 14, Line 5. Here, Wife testified that the cell phones were necessary because Husband did not have a landline at his home, and she could therefore not communicate with the children if they did not have cell phones. Nevertheless, the issue is not whether the cell phones are necessary, but whether their cost meets Form 14's definition of extraordinary expense.[21] Wife has cited no evidence that would establish that the children's use of cell phones is integral to, or even associated with, an "activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." Form 14, Line 6e, Comment A. Accordingly, the trial court misapplied the law in including the cost of cell phones in Line 6e of Form 14.

■ For the same reason, we reject Husband's contention that his paying the older child's car insurance should qualify as an extraordinary expense. Husband cites no evidence that the car insurance is integral to, or even associated with, an "activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." *Id.* Car insurance, like cell phones, may be a necessary expense in some cases, but, as noted, the issue here is whether such expenses meet Form 14's definition of extraordinary expense. As explained, they do not.[22] Accordingly, the

---

**19.** The children's cell phone bill constitutes over one-third of the cost of the alleged extraordinary expenses.

**20.** Although extraordinary expenses are not limited to the items enumerated in the comment to Line 6e of Form 14, " '[g]enerally, when words of general description are used in connection with a specific enumeration of articles, the general description will include *only* articles similar to those specifically mentioned.' " *Clean Unif. Co. v. Magic Touch Cleaning, Inc.,* 300 S.W.3d 602, 610 (Mo.App. E.D.2009) (quoting *West v. Nichols,* 227 S.W.2d 760, 762 (Mo.App.K.C.1950)) (emphasis added).

**21.** Many necessary expenses do not fall within the definition of extraordinary expense. Such expenses are presumed to be covered by the basic child support amount. *See* Form 14, Line 5. To permit expenses covered by basic child support to also be included as extraordinary expenses would permit double recovery by the support-receiving spouse, which is prohibited. *Foraker,* 133 S.W.3d at 98.

**22.** In any case, Husband testified at trial that Wife was already paying part of the older child's car insurance.

trial court did not err in failing to include car insurance as an extraordinary expense paid by Husband.

### d. Uninsured medical expenses

 Husband argues that the trial court erred in ordering him to pay 50% of the children's uninsured medical costs. We disagree.

Husband did not raise this issue at trial, and therefore he cannot raise it on appeal. *Mark Twain Plaza Bank,* 714 S.W.2d at 865. Husband submitted a parenting plan and asked that the court adopt it. Husband's proposed parenting plan provided that

> Petitioner/Mother shall pay 50% and the Respondent/Father shall pay 50% of the cost, expense or charges for all [medical costs] . . . incurred by . . . the child[ren] to the extent that such "medical costs" are . . . not fully covered . . . by the health benefit plan.

Again, we will not reverse the trial court on an issue that Husband did not advance at trial.

### e. "One Child" calculation

 Husband argues that the trial court erred in entering a notation in its Form 14 stating "[o]ne child: $767.00" without making a separate Form 14 calculation based on one child.[23] Husband requests that we strike the notation from the record. Wife argues that the notation is not a part of the court's findings or a part of the court's order.

We note that, here, the trial court obviously *did* make a separate Form 14 calculation, for, *if* one uses the same numbers the trial court used, the Form 14 calculation would yield $767.00 for one child. Simply noting this in the margin would provide a benefit to the parties, as it would serve as a guidepost (though not a binding one) for a recalculation of child support in the event of emancipation or death. We do not disapprove of this practice, as it can potentially save the parties the time and effort of seeking a modification decree. However, as noted, the trial court *did not* use the correct figure for extraordinary expenses, and therefore the $767.00 notation is inaccurate.[24]

 Nevertheless, despite the inaccuracy of the notation, the error is harmless. As the parties both acknowledge, the notation is not a part of the judgment and has no binding effect. Thus, it would serve no purpose to strike it. Point denied.

### VI. Parenting Plan

 Husband next argues that the trial court erred in implementing the Parenting Plan, in that the court failed to follow the statutory guidelines of section 452.375.2. We disagree.

 The failure to make the findings required by section 452.375.2 must be raised in a motion to amend the judgment. Rule 78.07(c); *Bottorff v. Bottorff (In re Marriage of Bottorff),* 221 S.W.3d 482, 485 (Mo.App. S.D.2007). Here, Husband filed two motions to amend the judgment, but in

23. When calculating child support for more than one child, the order shall be a gross amount or should be ordered incrementally, and, in the latter case, the court is required to complete a separate Form 14 for each child. Form 14, Line 12, Comment B.

24. Using the correct extraordinary expense figure, a notation of "One-child: 700.00" would have provided a more accurate guidepost. Such a notation would still not be binding, and, in all likelihood, would in fact be slightly inaccurate in this case, given that the extraordinary expenses of the children would decrease in the event of emancipation or death of one of the children, resulting in a corresponding decrease in the presumed child support amount.

neither motion did he raise the trial court's alleged failure to follow section 452.375.2. Husband states that "[s]aid arguments were addressed in Husband's various post-trial motions," but he cites us to nothing in the record that would support that statement, and we have found no support for it from our own review of the record.

Husband also requests that we engage in plain error review of this point. We decline to do so because, as Husband's counsel stated at the post-trial hearing, the trial court's "order essentially enters a parenting plan much, much closer to the one that Mr. Pickering suggested" than that suggested by Wife. In fact, Husband's trial counsel conceded that the trial court "properly found a parenting plan . . . in the best interest of these children."

Thus, Husband did not preserve this alleged error and in fact argued at the post-trial hearing that the court had essentially adopted his own parenting plan in the best interests of the children. Accord, we deny Husband's point.

## VII. Medical Insurance

■ Husband argues that the trial court erred in ordering Wife to provide medical insurance for the children. We disagree.

"If health benefit plans [to cover the children] are available to both parents upon terms which provide comparable benefits and costs, the court or the division shall determine which health benefit plan, if any, shall be required, giving due regard to the possible advantages of each plan." § 454.603.4. In evaluating the possible advantages of competing health insurance plans, the trial court has broad discretion. *Gatton v. Gatton*, 35 S.W.3d 930, 933 (Mo. App. W.D.2001).

Here, before they separated, Husband and Wife decided to purchase a health insurance plan for their children independently from the plan provided by Husband's employer. Wife testified that she wished to continue to provide coverage through the separate plan for the sake of stability, citing (1) Husband's propensity to change jobs frequently;[25] (2) the risk that changing insurance would result in pre-existing conditions not being covered, and (3) the benefit of the children being able to retain their current insurance when they left college. Husband testified that he believed this arrangement should change because the medical plan provided by his employer was less expensive than the plan that currently covers the children. Husband submitted evidence showing that his employer's plan was less expensive, but there was little to no testimony regarding which plan provided better coverage. Wife testified vaguely that she had been informed by an insurance professional that the children's current plan provided better coverage. Trial counsel for Husband argued that the benefits were essentially the same.

There is nothing in the record to suggest that the trial court abused its broad discretion on this point. *See id.* Although the plan provided by Husband's employer is apparently less expensive, the trial court could have decided, as the parties themselves decided prior to separating, that it was in the best interest of the children for Wife to continue with a plan that (1) did not depend upon Husband's employment, which had historically been subject to frequent change; and (2) provided other benefits. Point denied.

## VIII. Attorney's Fees

■ Husband argues that the trial court erred in awarding Wife her attorney's fees. We disagree.

---

**25.** Husband changed jobs fourteen times in eighteen years.

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

§ 452.355.1. "A trial court may also consider a spouse's conduct during the marriage in determining attorney's fees." *Maninger v. Maninger*, 106 S.W.3d 4, 13 (Mo.App. E.D.2003). In an appeal from a dissolution case, we will not reverse an attorney's fee award unless the trial court abused its discretion. *Potts v. Potts*, 303 S.W.3d 177, 191 (Mo.App. W.D.2010). "The trial court is considered an expert as to the necessity, reasonableness, and value of attorneys' fees and thus, the trial court's decision is presumptively correct." *Krepps v. Krepps*, 234 S.W.3d 605, 616 (Mo.App. W.D.2007). We will only reverse an award of attorney's fees when the award is so arbitrary and unreasonable as to indicate indifference or a lack of consideration in the trial court. *Id.*

Here, the relevant factors justify an award of attorney's fees to Wife. *See* § 452.355.1. Husband's income was much higher than Wife's, and thus he was in a better position to pay attorney's fees. Moreover, during the pendency of the dissolution proceedings, Husband liquidated marital assets without consulting Wife and paid his own attorneys with the proceeds. Husband committed marital misconduct. The merits of the case favored Wife, as evidenced by the court's judgment. Given these factors, the trial court was within its discretion in awarding attorney's fees to Wife.

## Conclusion

Since the record contains all of the facts that are necessary to amend the trial court's judgment without remanding, we will give such judgment as the trial court ought to have given. Rule 84.14. When recalculating the presumed child support award in the appropriate fashion, the presumed child support amount decreases from $956 to $890 per month. Accordingly, the trial court's Form 14 is so amended. Further, the trial court's judgment is amended to impose upon Husband a child support obligation of $890 per month, under the conditions set forth in the trial court's judgment. In all other respects, we affirm the trial court's judgment.

LISA WHITE HARDWICK, Judge, and CYNTHIA L. MARTIN, Judge, concur.